**Quincie RANKIN, individually and on behalf of others similarly situated; Plaintiff,**

v.

**David P. ROTS, et al., Defendants.**

**No. 02–CV–71045.**

United States District Court,
E.D. Michigan,
Southern Division.

April 16, 2004.

---

**31.** During the class period, there were approximately 8,500 shareholders of record.

**514**

I. Mark Steckloff, Sachs Waldman, Mary Ellen Gurewitz, Sachs Waldman, Detroit, MI, for Plaintiff.

Donald R. Bachand, III, Garratt & Bachand, Bloomfield Hills, MI, Robert N. Eccles, O'Melveny & Myers, Washington, DC, Erin E. Kelly, Mark B. Blocker, Scott R. Lassar, Walter C. Carlson, Sidley, Austin, Chicago, IL, Sharon M. Woods, Todd R. Mendel, Barris, Sott, Detroit, MI, Daniel P. Colling, Walter B. Connolly, Jr., Foley & Lardner, Detroit, MI, Lisa B. Deutsch, Robert C. Myers, Seth C. Farber, Dewey, Ballantine, New York City, Cara J. Heflin, Howard & Howard, Ann Arbor, MI, Jon R. Steiger, Quinn, Emanuel, Los Angeles, CA, Philip T. Carter, Howard & Howard, Bloomfield Hills, MI, for Defendants.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

COHN, District Judge.

### I. Introduction

This is a case under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* claiming breach of fiduciary duty which has as its genesis the collapse of Kmart Corporation into bankruptcy. Plaintiff Quince Rankin (Rankin) seeks recovery on behalf of herself and other similarly situated Kmart employees who invested in Kmart stock through participation in Kmart's

401(K) plan under which Kmart matched voluntary participant contributions with investments in Kmart stock. Rankin names as defendants various officers and directors of Kmart which she claims are fiduciaries within the meaning of ERISA and have breached their fiduciary duties with respect to the administration of the 401(K) plan essentially by continuing to invest in Kmart stock at a time when Kmart was in serious decline and which resulted in significant losses to the Plan. Rankin's breach of fiduciary duty claims are broadly divided into two categories: (1) that the defendants breached their duty of prudence by continuing to retain and invest in Kmart stock and (2) that the defendants breached their duty to disclose by making material misrepresentations about the strength of Kmart and the propriety of investing in Kmart stock.

Before the Court is Rankin's motion for class certification under Fed.R.Civ.P. 23, seeking to certify this action as a class action on behalf of the following class:

> All participants and beneficiaries of the Kmart Retirement Savings Plans and their predecessors from March 15,1999 onward

For the reasons that follow, the motion will be CONDITIONALLY GRANTED under Rule 23(b)(1)(A) and (B) subject to further proceedings regarding the class definition.

### II. Background [1]

#### A. The parties

There are two Kmart retirement savings plans at issue. Kmart Retirement Savings Plan A and Kmart Retirement Savings Plan B (collectively, the Plan). The plans are virtually identical.

Rankin is a participant in Kmart's Retirement Savings Plan A. She held approximately 160 shares of Kmart stock in the Plan. However, her employment was terminated when the store at which she worked was closed as part of Kmart's reorganization under Chapter 11 of the Bankruptcy code. She

---

1. The background is substantially taken from the Court's order denying defendants' motion to dismiss.

was paid her vested interest in the Plan on or about March 13, 2003.

Defendants [2] are:

Charles Conway former CEO and Director

Jim Defebaugh Vice–President, Associate General Counsel and Secretary and member of the Employee Benefit Plans Investment Committee (hereafter referred to as the "EBPIC") [3]

Don Morford Director of Employee Benefits and member of the EBPIC

James Adamson Outside Director and CEO, formerly served on Finance Committee

Lilyan Affinito Outside Director, formerly on Audit Committee

Richard Cline Outside Director, formerly on Compensation and Incentives Committee

Willie Davis Outside Director, formerly on Compensation and Incentives Committee

Joseph Flannery Outside Director, formerly on Finance Committee

Robert Kennedy Outside Director, formerly on Compensation and Incentives Committee and Finance Committee

Robin Smith Outside Director, formerly on Audit Committee

Thomas Stallkamp Outside Director, formerly on Finance Committee

Richard Statuto Outside Director,[4] formerly on Finance Committee

## B. The Plan

The Plan is both defined contribution plan and an eligible individual account plan. The Plan maintains an individual account for each participant and provides benefits based solely on the amount contributed. There are two sources for contributions: voluntary contributions by participants and matching contributions by Kmart. The matching or employer contributions are part of an Employee Stock Ownership Plan (an "ESOP") which under ERISA allows the matching contributions to be invested in the company's stock and limits a participant's ability to transfer contributions to other investments. From March 15, 1999 to January 25, 2002, the Plan provided that the ESOP assets at all times shall be invested primarily in [Kmart] stock. See Art. 14.1.[5] The Plan also provides that a participant's employer contributions must be in Kmart stock until the participant reaches age 55 and had been a participant for five full years. After January 1, 1999, a participant age 55 who had been a participant for five years could elect to have future employer contributions invested in any of the investment funds [6] by making a proper election

---

2. David Rots, originally listed as the first defendant in the case, was dismissed by stipulation on February 10, 2003. Also dismissed, on February 6, 2003, was defendant Troy Lindon. Named defendants Marty E. Welch, Tim Crow, John McDonald and James Welch have apparently not been served. Named defendants Stephen Bollenbach and J. Richard Munro (who were not served at the time of the filing of the original motions to dismiss) filed a motion to dismiss, to which Rankin responded. That motion is not yet scheduled, it will be dealt with separately.

3. The EBPIC is alleged to be a "committee formed by the Board of Directors whose function, in part, was to assist in the management and investment of Plan assets, as well as other administrative duties." Second Amended Complaint at ¶ 27.

4. Hereinafter, defendants James B. Adamson, Lilyan Affinito, Richard Cline, Willie Davis, Joseph Flannery, Robert Kennedy, Robin Smith, and Thomas Stallkamp, and Richard Statuto will be collectively referred to as "the Outside Directors."

5. After January 25, 2002, when Kmart filed for bankruptcy, the Plan was amended to provide that the matching contributions would no longer be made in Kmart stock.

6. Article 13 of the Plan, entitled Operation of Investment Funds, contemplates that the Plan will consist of a number of investment funds which shall include a fund consisting only Kmart stock. Indeed, the Plan states that the "Investment Funds shall at all times include a Company Stock Fund." Art.13.1. This Company Stock Fund is defined as "the Investment Fund described in section 13.1 which invests in Company Stock." Art. 2.11. "Company Stock" is defined as "the common stock of [Kmart]." Art. 2.10. Thus, the term "Company Stock" means Kmart stock and "Company Stock Fund" means a stock fund invested solely in Kmart stock.

The nature and composition of other investment funds actually in the Plan is not clear but the Plan says that such investment funds may consist of "Investments of a short-term nature (such as obligation of the Untied States Government and commercial paper) and deposits with a

with Kmart.[7] During that time, the Plan held significant amounts of its assets in Kmart stock.

### C. ERISA Generally

Rankin asserts two types of claims under ERISA: a claim under 29 U.S.C. § 1132(a)(2) and under § 1132(a)(3).[8] Section 1132(a)(2) allows "a participant, beneficiary or fiduciary" to bring a civil action for breach of fiduciary duty. Section 1132(a)(3) allows "a participant, beneficiary, or fiduciary" to bring a civil action challenging other violations of ERISA.

Section 1109 establishes the scope of liability of a fiduciary. It provides in relevant part:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

. . .

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

Any recovery for a breach of fiduciary duty goes to the ERISA plan. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 91–92 (6th Cir.1997).

### D. This Case

On March 18, 2003, Rankin filed a two count complaint running 61 paragraphs, claiming breach of fiduciary duty against all defendants. On October 15, 2002, Rankin filed a First Amended Complaint running 121 paragraphs and again making two claims for breach of fiduciary duty against all defendants.

On February 3, 2003, defendants filed motions to dismiss the First Amended Complaint. Also on that date, Rankin filed a Second Amended Complaint running 144 paragraphs and making six claims for breach of fiduciary duty against defendants. The Court denied defendants' motion to dismiss. *See* Memorandum and Order filed August 20, 2003.

Rankin then filed the instant motion, to which defendants have responded.[9]

### III. Analysis

### A. Standard for Class Actions–Rule 23(a)

Federal Rule of Civil Procedure 23(a) provides: "One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative par-

---

financial institution, as well as cash, pending investment in an identified Investment Fund or for purposes of carrying out the provisions of the Plan." Art.13.2

**7.** Kmart removed this restriction in February 2002 at which time Kmart stock was essentially worthless.

**8.** Section 1132 provides in relevant part:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

**9.** Defebaugh and Morford and the Outside Directors filed separate responses. Conaway did not file a separate response, but rather joined in both responses.

ties will fairly and adequately protect the interests of the class."

The Court must conduct a "rigorous analysis" into whether the movant has demonstrated that the action satisfies all of the prerequisites of Rule 23(a). *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Stout v. J.D. Byrider,* 228 F.3d 709, 716 (6th Cir.2000). Thus, a plaintiff must show that the action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. *See In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996) ("The party seeking the class certification bears the burden of proof."). A district court has broad discretion in determining whether to certify a class; yet, it must exercise that discretion within Rule 23's framework. *Id.* A district court may not inquire into the merits of the class representatives' underlying claims, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), but should accept the complaint's allegations as true. The district court, however, may only certify a class where "an adequate statement of the basic facts" demonstrates that each of Rule 23's requirements are met. *American Med. Sys.,* 75 F.3d. at 1079. In making such a determination, a district court may draw reasonable inferences from the facts before it. *Senter v. General Motors Corp.,* 532 F.2d 511, 520 (6th Cir.1976).

Moreover, when in doubt as to whether to certify a class action, the district court should err in favor of allowing a class. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985).

Each of the four requirements under Rule 23(a) will be separately considered.

### 1. Numerosity

Rankin says that the class will likely include "thousands" and will include persons located throughout the United States, making joinder impracticable. Defendants do not contest numerosity. Thus, this element is satisfied.

### 2. Commonality

"The commonality test is qualitative rather than quantitative" in that "there need be only a single issue common to all members of the class." *American Med. Sys.,* 75 F.3d at 1080. On the other hand, not every common question will suffice because, "at a sufficiently abstract level of generalization, almost any set of claims ... could display commonality." *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998). Rather, there must be "a common issue the resolution of which will advance the litigation." *Id.*

Rankin says there are several common questions of law and fact, as follows:

1. Whether the class members are or have been participants or beneficiaries in the Plan;

2. Whether defendants were fiduciaries of the Plan within the meaning of ERISA;

3. Whether defendants have breached the duties, responsibilities, and obligations imposed upon them by ERISA;

4. Whether, pursuant to ERISA, defendants are personally liable to make good to the participants and beneficiaries any losses resulting from their breaches of fiduciary duties;

5. Whether, pursuant to ERISA, defendants are liable for the breaches of fiduciary duties by other defendants that occurred while they were fiduciaries; and

6. Whether, pursuant to ERISA, defendants are liable for the actions of non-fiduciaries who participated in defendants' breaches of fiduciary duties.

Defendants argue that this requirement is not met because "they have a number of defenses unique to" Rankin. This argument, however, relates to the typicality requirement, not the commonality requirement. To the extent that defendants argue that commonality is lacking because the decision of whether to hold Kmart stock (in the case of voluntary contributions) is individualized, this argument lacks merit. Another district court, in a similar case alleging ERISA breaches of fiduciary duty (disclosure violations) in connection with an ESOP plan, addressed this argument as follows:

While the decisions as to whether to hold Ikon stock may ultimately be individualized, only one common issue of law or fact must exist to satisfy the commonality requirement of Rule 23. In this case, common questions include whether the defendants acted as fiduciaries, what communications they made to plan participants and beneficiaries, and whether those communications contained material misrepresentations. .... Other common questions include whether the individual defendants were aware of the alleged improprieties committed by Ikon, whether there were conflicts of interest and what actions were taken if there were, whether the defendants took appropriate steps to protect the plan and recover damages, and whether there might be co-fiduciary liability....

*In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 464 (E.D.Pa.2000).

Here, Rankin's listed common factual and legal questions satisfy the commonality requirement. Moreover, this case is based not only on alleged misrepresentations which led Kmart employees to continue to invest in Kmart stock through making voluntary contributions to the Plan, it is also based on defendants' decision to continue investing Kmart's matching portion solely in company stock notwithstanding knowledge of Kmart's financial situation. The latter allegation, which is a claim for breach of the duty of prudence, clearly presents a common issue. Moreover, the complaint alleges that defendants acted similarly with regard to all contributions to the Plan, without regard to whether these contributions were from voluntary employee contributions or employer matching contributions.[10]

### 3. Typicality

■ The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). The inquiry

focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 510 (W.D.Mich.1998). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d 388 (6th Cir.1998). The typicality requirement is met if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." *Little Caesar Enterprises, Inc. v. Smith*, 172 F.R.D. 236, 242–43 (E.D.Mich. 1997) (citing *Newberg on Class Actions* § 18.08). Typicality may exist where there is a very strong similarity of legal theories, even if substantial factual distinctions exist between the named and unnamed class members. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985).

Rankin says her claims are typical because "she was a participant and beneficiary of one or more of the Plans during the class period." Furthermore, under ERISA, she is entitled to bring a claim for plan wide relief. *See* 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty goes to the plan).

■ Defendants, however, argue that Rankin's claims are not typical for several reasons. First, they say that because she did not make any voluntary contributions to the plan in Kmart's stock, she "has no personal claim for the alleged disclosure violations." The also say that her claim that defendants violated the duty of prudence is limited to her employer matching contributions. This argument is not well-taken. The fact that Rankin did not voluntarily invest in Kmart stock is a minor distinction in relation to the overarching question of whether defendants violated their fiduciary duties under ERISA.

---

10. The Court reserves the right to reconsider this issue in the determination of the definition of the class. While the fact that Rankin does not have a claim for disclosure violations because she never self-directed any investment in Kmart stock does not destroy commonality or otherwise make certification improper at this time, the disclosure violations may be excluded from the class definition for other reasons.

Second, defendants argue that based on Rankin's deposition testimony, they have unique defenses to her claims, *i.e.* ratification and estoppel. These defenses are based on Rankin's statements that she never read the Plan or Plan documents, never read any press releases or Kmart financial statements, never followed Kmart's business practices or financial condition, never followed the performance of her investment, and never apprized herself with investment options under the Plan. The fact that there may be individualized defenses does not necessarily defeat class certification when Rankin must still prove the same core issues of whether defendants acted as fiduciaries and whether they breached their fiduciary duties. This argument "ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *Ikon Office Solutions,* 191 F.R.D. at 465.

Defendants also argue that Rankin's claims are not typical because she lacks standing. Defendants argue Rankin has not standing because (1) she is no longer a participant in the Plan and (2) any recovery will go the Plan so her individual losses, if any, is incapable of redress.

 To have standing to sue under ERISA § 502(a), a plaintiff must be a "a participant, beneficiary, or fiduciary" of a plan. 29 U.S.C. § 1132(a) (2000). A "participant" is defined by ERISA as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employ." 29 U.S.C. § 1002(7) (2000). "In order to establish that he or she [is eligible or] 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

The Court of Appeals for the Sixth Circuit, however, has made clear that "[i]n determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of the plaintiffs' claim.... Thus, while the Supreme Court's definition of 'participant' in *Firestone* guides our standing analysis, it is not necessarily dispositive." *Swinney v. General Motors Corp.,* 46 F.3d 512, 518 (6th Cir.1995) (citations omitted). The court of appeals also stated that

> along with a majority of circuits, [we] have developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach. Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan. ERISA should not be construed to permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner. .... The enforcement provisions of ERISA were meant to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due participants."

*Swinney,* 46 F.3d at 519 (citations omitted). Similarly, in *Drennan v. General Motors Corp.,* 977 F.2d 246 (6th Cir.1993), the court of appeals held that former GM employees who were eligible for plan benefits at the time of alleged breach of fiduciary duties. Although *Swinney* and *Drennan* involved former GM employees alleging breach of fiduciary duties with respect to GM's representations regarding eligibility for benefits which resulted in some participants giving up their rights under the plan, the result should be no different. Rankin was a participant in the Kmart plan during the time when the alleged breaches of fiduciary duty occurred. She was paid her vested benefit when the Kmart store she was employed at closed. To find that she lacks standing would permit

Kmart to exclude potential class members by simply paying them their vested benefits. ERISA should not be interpreted to circumvent a plaintiff's recovery in this manner.

Moreover, the cases upon which defendants rely are unpersuasive. In *Bona v. Barasch*, 2003 WL 1395932 (S.D.N.Y. Mar.20, 2003) (unpublished), the plaintiffs who were dismissed for lack of standing did not have a vested benefit and did not have any future eligibility to receive any benefits regardless of whether the defendants breached their fiduciary duties. Here, Rankin had a vested benefit which, if defendants breached their fiduciary duties, might have affected her benefit. She therefore has standing to bring this action on behalf of the Plan. If the Plan prevails, then any recovery would likely affect the amount of Rankin's benefit.

In *Renton v. Kaiser Found. Health Plan, Inc.*, No. C00–5370, 2001 WL 1218773 (W.D.Wash. Sept.24, 2001) (unpublished), the district court held that "under the plain language of ERISA's civil enforcement provisions, class members who are former, but not current participants in a . . . plan lack standing to bring the claims alleged in the complaint." However, the district court did not engage in any meaningful analysis of ERISA standing, unlike the Sixth Circuit decisions discussed above. The district court was also not presented with the issue of whether a former participant with a vested benefit who was a participant at the alleged time of the breach of fiduciary duty has standing.

 Defendants also argue that Rankin lacks standing because any recovery for a breach of fiduciary duty claim will go to the Plan, not the individuals. Thus, defendants argue that Rankin's injury is incapable of redress by a favorable decision. This argument has some merit. "[S]uits under ERISA for breach of fiduciary duty arise under 29 U.S.C. § 1132(a)(2), which allows beneficiaries of a plan . . . to seek relief under 29 U.S.C. § 1109." *Bryant v. International Fruit Product Co.*, 886 F.2d 132, 135 (6th Cir.1989). Thus, a plaintiff cannot seek recovery on their own behalf, but rather only on behalf of the plan. To the extent that Rankin is pursing a claim solely on her own behalf, she lacks standing because a cause of action under § 1132(a)(2) allows recovery to inure only to the ERISA plan, not to individual beneficiaries. *Ibid.; Tregoning v. American Community Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir.1993) (§ 1109 provides relief only for a plan and not for individual participants). Rankin, however, is also suing on behalf of the Plan for breach of fiduciary duty. If successful, as stated above, damages will presumably flow to the Plan and in turn, to class members, including Rankin. Thus, her injuries (a reduction in her vested benefit due to the decline in Kmart's stock and defendants' breach of fiduciary duties) is capable of redress. Overall, Rankin has established that her claims are typical. Any other considerations as to the precise form of recovery to the Plan and Rankin is premature. Those issues relate to accounting and allocation, not whether Rankin has standing.

### 4. Adequacy

In *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976), the Sixth Circuit articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." As one commentator has noted:

> There is disagreement about the extent to which evaluation of the class representatives is part of the "adequate representation" inquiry under Rule 23(b)(4), or whether the inquiry involved only considerations of any conflict between the class representatives and absent members of the class and the experience of counsel.

1 Newberg, *Newberg on Class Actions* § 3.33 (4th ed.2003). Based on the language in *Senter*, the Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff.

 Defendants do not dispute the qualifications of Rankin's counsel, but rather argue that Rankin herself is not an adequate representative because she admitted at deposition to having essentially no knowledge of

ERISA, the role of the defendants, or the underlying facts of the case. However, it is inappropriate to attack the adequacy of a class representative simply based on the representative's ignorance of the underlying facts. *See Koch v. Dwyer*, 2001 WL 289972 (S.D.N.Y. Mar.23, 2001)(unpublished) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372–74, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966)). Moreover, a careful review of Rankin's excerpted deposition testimony shows that she understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan. She also understands her obligation to assist her attorneys and testify. This is sufficient. As Rankin points out, the alleged inadequacies of Rankin's knowledge of the case are "consistent with the problems faced where damages occurs to unsophisticated investors." Notably, defendants have not identified any antagonistic interests between Rankin and the proposed class. Rankin is therefore an adequate class representative.

Thus, Rankin has established all of the requirements under Rule 23(a).

### B. Rule 23(b)

■ Rankin requests certification under Rule 23(b)(1) or (b)(2).[11] In addition to satisfying the requirements under Rule 23(a), a plaintiff must also satisfy at least one of the requirements under Rule 23(b). *Am. Med. Sys.*, 75 F.3d at 1079.

#### 1. Rule 23(b)(1)

Rule 23(b)(1) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ...

Rankin says that her ERISA claims will adjudicate the interests of all Plan participants therefore making certification under subsection (b)(1)(A) or (B) proper. Defendants first argue that certification under (b)(1)(A) is improper because "the fact that individual participants made individual investment decision for their own individual accounts means that participants' claims will not necessarily rise or fall together." Defendants cite *Nelson v. IPALCO Enter., Inc.*, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003) (unpublished),[12] where the district court refused to certify a class in an ERISA breach of fiduciary duty under Rule 23(b)(1) case brought by plan participants. The district court stated:

This court finds that certification under Rule 23(b)(1) is not appropriate here. The best argument for certification under Rule 23(b)(1) is that ERISA requires that any monetary relief be awarded directly to the Thrift Plan itself rather than to the individual plaintiffs. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140[, 105 S.Ct. 3085, 87 L.Ed.2d 96] (1985); 29 U.S.C. § 1109(a) (remedy for plan fiduciary's breach of fiduciary duty is to "make good to such plan any losses to the plan resulting from such breach ....") (emphasis added). Rule 23(b)(1) may apply where the final decisions on the merits for all class members will be the same. The existence of the individual accounts and individual investment decisions, however, means that the correct decisions for different class members may be different. There are individual issues of reliance and causation, as well as some individual issues

---

**11.** Rankin also says that class certification under Rule 23(b)(3) is proper, but has not briefed the issue. Therefore, certification under Rule 23(b)(3) will not be considered.

**12.** Notably, the court in *IPALCO* certified a class under Rule 23(b)(3) (after having found that the requirements under Rule 23(a) were met).

presented by affirmative defenses. The case therefore fits the profile for Rule 23(b)(3), which requires opt-out rights as well as a showing that common issues predominate and that a class action is the superior method for resolving all claims. The presence of those individual issues and the prospect of different results for different class members means that Rule 23(b)(1) does not fit this case.

Rankin, however, cites *Ikon Office Solutions, supra,* a similar case challenging an ERISA plan's use of the employer's stock as an option for the participants' self-directed investments and the plan's practice of keeping all employer contributions in the form of employer stock. The district court in *Ikon* certified a plaintiff class under Rule 23(b)(1)(A) and (B), rejecting defense arguments that individual issues of reliance and causation should bar certification. *Id.* The district court explained:

> The court again finds that the potentially individualized questions do not affect any of the essential aspects of the class action, which are the common course of conduct by the defendants towards the putative class and the significance of the misrepresentations, if any. The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. *See, e.g., Feret [v. CoreStates Financial Corp.],* 1998 WL 512933, at *13 [(E.D.Pa.1998)]; *Bunnion,* 1998 WL 372644, at *14; *Kane v. United Indep. Union Welfare Fund,* Civ. A. No. 97–1505, 1998 WL 78985, at *8–9 (E.D.Pa. Feb.24, 1998). There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*Ikon Office Solutions,* 191 F.R.D. at 466.

The district court in *Bunnion v. Consolidated Rail Corp.,* 1998 WL 372644 (E.D.Pa.1998)(unpublished) reached a similar conclusion in another ERISA breach of fiduciary duty case. The district court stated:

> Certifications under both 23(b)(1)(A) and 23(b)(1)(B) are common in labor relations cases. 5 Moore's §§ 23.41[4], 23.42[3][c]. "Because a defendant often provides unitary treatment to all members of the putative class [in] such an area, a putative class member's rights may be implicated by litigation brought by other class members." *Id.* § 23.42[3][c].

> Defendants dispute the applicability of 23(b)(1)(A) and (B) because they contend that the dissimilarity of plaintiffs' claims preclude it. According to defendants, (b)(1) should be limited to those cases with no or few individual questions.

> . . . .

> With these principles in mind, we examine the remaining counts to ascertain whether certification under 23(b)(1)(A) or (b)(1)(B) is appropriate. We find that the ERISA actions in Counts I, II, III, VI, VIII, IX, and XIII are appropriate for certification under both of these provisions of Rule 23. All of these claims relate to the interpretation and application of ERISA plans. Conrail treated the proposed class and subclass identically and any equitable relief granted will affect the entire class and subclass. Failure to certify a class would leave future plaintiffs without adequate representation. Moreover, we see a high likelihood of similar lawsuits against defendants should this class be denied. Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice. While plaintiffs list a variety of relief sought in their amended complaint, ERISA specifically limits the relief available to that of an equitable, that is, declaratory or injunctive, nature. 29 U.S.C. § 1132. To the extent that money damages are awarded or sought, we find them to be incidental.

*Bunnion,* 1998 WL 372644 at *13 (footnote omitted).

The Court finds the reasoning in *Ikon* and *Bunnion* more persuasive than the reasoning in *IPALCO.* Rankin's claims relate to defendants unitary actions with regard to the Plan.

Defendants treated the entire class identically. Although there may be factual differences as to whether, in the case of voluntary employee contributions, a class member relied on any alleged misrepresentations, the alleged misrepresentations are alleged to have been made to the entire class of participants. This is not a case where defendants are alleged to have had individualized communications with a participant. Rather, this is a case where defendants' uniform communications with its participants and its uniform decisions with respect to the employer matching portion of the Plan forms the basis for Rankin's claims. Thus, individualized issues do not predominate.

In addition, a failure to certify a class could expose defendants to multiple lawsuits and risk inconsistent decisions. Defendants do not deny that there could be multiple lawsuits, but rather argue that liability for breach of fiduciary duty is the type of issue that can carry over into other cases. This argument actually militates in favor of class certification since it shows how adjudication of Rankin's claims will likely be dispositive of the claims of other potential class members-the basis for certification under (b)(1)(B). Defendants also say that because ERISA provides for recovery of attorney fees to successful plaintiffs, there is little need for class certification. This argument lacks merit. Class certification does not, and should not, turn on statutory attorney fee provisions.

Overall, the Court finds that certification under Rule 23(b)(1) is proper. Certification will be under (b)(1)(A) and (B).

Rankin also says that certification is proper under Rule 23(b)(2) because she is primarily seeking equitable relief in the form of making the Plan whole as a result of defendants' alleged breach of fiduciary duty. Defendants argue that Rankin is primarily seeking monetary not equitable relief and therefore certification under (b)(2) is improper. In light of finding that certification is proper under Rule (b)(1), this argument need not be addressed.

### C. Class Definition

As stated above, Rankin seeks to certify a class defined as

All participants and beneficiaries of the Kmart Retirement Savings Plans and their predecessors from March 15,1999 onward

The March 15, 1999 date is the alleged date when the Plan began investing in Kmart stock though employer matching contributions.

Defendants argue that if a class were certified, it should be narrowed to include only current Kmart participants who received matching contributions from May 17, 2001 until January 22, 2002. Defendants say that the first purported misrepresentation listed in the Amended Complaint occurred on May 17, 2001 and January 22, 2002 is the date when Kmart filed for Bankruptcy and ended matching contributions in Kmart stock. Defendants also say that any class should be divided into subclasses based on the types of contributions.

As stated at the hearing on April 14, 2003, Rankin has ten (10) days in which to submit a proposed order containing a class definition as well as a paper outlining the future procedural steps of the case, including notice. Defendants have five (5) days thereafter to respond, including submitting a proposed order containing a class definition as well as responding to Rankin's proposed procedural steps.

SO ORDERED.