**In re SCHERING–PLOUGH CORPORATION ERISA LITIGATION**

No. Civ.A. 03–1204.

United States District Court, D. New Jersey.

June 28, 2004.

Joseph J. Depalma, Lite, Depalma, Greenberg and Rivas, LCC, Newark, NJ, for Plaintiffs.

Douglas Scott Eakeley, Lowenstein Sandler PC, Roseland, NJ, for Defendants.

**OPINION**

HAYDEN, District Judge.

Plaintiffs Jingdong Zhu and Adrian Fields (collectively, "plaintiffs"), on behalf of the Schering–Plough Corporation Employee's Savings Plan ("Savings Plan") and its participants and beneficiaries (collectively the "Plan Participants"), have filed a five count complaint alleging violations of the Employee Retirement Income Security Act ("ERISA") against multiple defendants. These defendants are: (1) Schering–Plough Corporation as the employer ("Company"); (2) various members of the board of directors of the Company, all but one of whom were also members of the Company's Pension Committee ("Directors"); (3) the Schering–Plough Em-

ployee Benefits Committee and the committee's individual members (collectively, "Benefits Committee"); (4) the Schering–Plough Employee Benefits Investments Committee and its individual members (collectively, "Investment Committee"); and (5) Vanguard Group, Inc., as the trustee of the Company's benefits plans ("Trustee"). In lieu of answering, these defendants have joined in a motion to dismiss for failure to state a claim, which was argued to the Court.

## DISCUSSION

### The Complaint

Plaintiffs' complaint contains 129 paragraphs of factual allegations. Familiar principles apply: for the purposes of this motion to dismiss, where the complaint presents the only record, plaintiffs' factual allegations must be accepted as true. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 408 (3d Cir.2003). This Court not need, however, "accept as true 'unsupported conclusions and unwarranted inferences'" set forth in the complaint. *Doug Grant, Inc. v. Bonn*, 232 F.3d 173, 184–85 (3d Cir.2000) (quotation omitted).

The first of plaintiffs' allegations describe the various defendants and their respective roles *vis-a-vis* the Savings Plan that the Company offered to its employees for their retirement savings. Then the complaint describes the Savings Plan itself, which was sponsored by the Company and offered employees an opportunity to invest a percentage of their pre-tax income in their choice among 14 investment vehicles. (Compl.Ex. E.) Although the Savings Plan indicates that the "Company on behalf of Employees may make Salary Deferral Contributions to the Plan," plaintiffs

do not plead that the Company matched employee contributions during the time at issue. All contributions made into the various funds came from the participant employees. (*Id.*) One of the available fund alternatives was investment in the Schering–Plough Stock Fund ("Stock Fund"), which consisted primarily of shares of the Company's stock.[1] (Compl.¶¶ 32–34.) Plaintiffs challenge the conduct of the defendants relative only to the Stock Fund.

Plaintiffs have alleged that all of the defendants acted as fiduciaries under ERISA with respect to the Stock Fund. (*Id.* at ¶¶ 33, 58.) Plaintiffs have asserted that the defendants breached their ERISA fiduciaries duties of prudence, care and loyalty by continuing to offer the Stock Fund as a Savings Plan alternative when the defendants knew of the unlawful and artificial inflation of the Company's stock value. (*Id.* at ¶ 111.) Additionally, plaintiffs contend that various unidentified defendants, failed to disclose negative material information about the Company, which induced Plan Participants to purchase, hold and maintain investments in Company stock. (*Id.* at ¶ 117.) Moreover, plaintiffs assert that at least some of the defendants, again not specifically identified, failed to avoid conflicts of interest, to consult with independent fiduciaries, and to monitor appointed fiduciaries, all to the detriment of the Savings Plan and the Plan Participants. (*Id.* at 116.)

The factual allegations claim that defendants operated the Company in a manner that caused financial harm to the Company, thereby affecting the value of the Stock Fund. (*Id.* at ¶¶ 69–110.) Specifically, plaintiffs contend that the Company attempted to receive approval from the Food and Drug Administration ("FDA") of a new allergy drug, Clarinex, to replace the

---

1. The Stock Fund did not consist wholly of Company stock because the fund also included investment of the money necessary to administer the fund.

Company's successful allergy drug, Claritin, whose patent was set to expire. The Company's efforts were significantly hampered because of failures to comply with FDA regulations regarding Good Manufacturing Practices ("GMP's"). (*Id.* at ¶¶ 71–73, 77–81, 84–85, 88.) GMP violations led to imposition of a $500 million fine, capital expenditures of $50 million for new equipment and system improvements to remediate violations, and additional hiring of new quality control employees, all to the financial detriment of the Company. (*Id.* at ¶¶ 91, 95.) Plaintiffs also assert that the defendants touted new potential drugs that never lived up to expectations. (*Id.* at ¶¶ 98–99, 103–104.) Finally, plaintiffs assert that securities charges brought against the Company, which ultimately resulted in $1 million of civil penalties, also hurt the value of the Stock Fund. (*Id.* at ¶ 105–107.) Plaintiffs contend that these corporate actions by defendants over a five year period caused the Company's share price to drop from a value of over $60 per share to a value of below $20 per share, defendants all the while failing to protect the Company's employees who invested in the Stock Fund from those losses. (*Id.* at ¶ 109.)

Plaintiffs couch their legal claims in terms of ERISA violations. Count One asserts that defendants breached their fiduciary duties of loyalty, exclusive purpose and prudence as is required under Section 1104(a)(1) of ERISA[2] because they continued to offer the Stock Fund as an investment alternative, thereby permitting Company employees to continue to invest in the Company's stock, even as its value was dropping. Count Two asserts that certain defendants breached their fiduciary duty to monitor other defendants who were performing ERISA functions. Count Three asserts that because the Stock Fund consisted of Company stock only, the defendants failed to fulfill their fiduciary duty to diversify investment options. Count Four asserts that the defendants breached their fiduciary duty to avoid conflicts of interest by being both corporate officers of the Company and ERISA fiduciaries under the Saving Plan without eliciting the assistance of independent advisors who could make impartial investment recommendations. Count Five asserts that to the extent any of the defendants are not deemed to be ERISA fiduciaries, they are still liable to plaintiffs under a theory of vicarious liability and respondeat superior.

### The Savings Plan, the Stock Fund and ERISA

By investing in the Stock Fund, plaintiffs have become shareholders of Company stock and as shareholders of a publicly traded company have certain rights under federal securities law. In fact, a class action lawsuit, invoking these securities laws, has been brought against the Company and is currently pending before this Court (the "Securities Action"). Moreover, this Securities Action is based in large part upon the same factual allegations of wrongdoing as are alleged in this suit. Plaintiffs contend in this suit, however, that their dual-status as both employees and shareholders implicates the further protections of ERISA above and

---

**2.** Sections of ERISA are referred to, often interchangeably, in one of two ways. Sometimes reference is made to the public law section number (a three digit number either beginning with a "4" or a "5") and other times reference is made to the codified statutory section number (a four digit number always beginning with "11"). Regardless of which source the section number is referenced from, the final digit remains the same. For the sake of consistency, even where the parties might otherwise make reference to the public law section number or use the references interchangeably, the Court will exclusively refer to the statutory reference numbers.

beyond that which is afforded them under securities laws and that they are entitled to relief beyond that which they can obtain through the Securities Action.

There are many types of benefit and retirement plans governed and protected by ERISA. The parties do not dispute that the Savings Plan is one of those plans. Because of how the Savings Plan functions, it is deemed under ERISA to be a particular type of plan—an individual account plan, otherwise known as a defined contribution plan. This type of plan is "a pension plan which provides for an individual account *for each participant and for benefits based solely upon the amount contributed* to the participant's account." 29 U.S.C. § 1002(34) (emphasis added). This is in contrast to a defined benefit plan which is "a pension plan other than an individual account plan." 29 U.S.C. § 1102(35).

This distinction is critical because although "ERISA was enacted to provide security in employee benefits, it protects only those benefits provided in the plan." *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3d Cir.1991); *accord Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). "ERISA neither mandates the creation of pension plans nor in general dictates the benefits to be afforded once a plan is created. Thus, ordinarily only the plan can create an entitlement to benefits." *Smith v. Contini*, 205 F.3d 597, 602 (3d Cir.2000) (internal quotations omitted); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (stating that ERISA was intended "to protect contractually defined benefits"). Here, the Company's Savings Plan simply guarantees a right to participate in retirement investment through elective contributions made during employment. The Savings Plan does not define a pre-determined

benefit employees will receive upon retirement. Instead, the retirement benefit is determined at the time of retirement, based upon the amount of front-end contributions made by the employee during employment, the choice of investment vehicles, and the subsequent performance of those investments. This is in contrast to a defined benefit plan where an employee is entitled to a fixed benefit paid out upon retirement. *See generally* 29 U.S.C. § 1102(23); *see also Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (discussing Congress' intent of "making sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it")

■ The Company elected to establish its benefit plan in this manner. This Court is "required to enforce the Plan as written unless [it] can find a provision of ERISA that contains a contrary directive." *Dade v. N. Am. Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir.1995). Here, the Savings Plan documents expressly indicate to employees that "[o]nly you can decide how best to invest your contributions to the Plan," and caution that "you are fully responsible for the allocation of your Plan account balance among the various investment options." (Compl. Ex. E (emphasis added).) The Savings Plan continues on to state:

> The investment decisions made by you in selecting among the investment options will have a direct impact on the amount available to you under the Plan
> . . . . .
> All investing involves risk. There are inherent trade-offs between risk and reward which you must judge for yourself. The investment options offer you alternatives among which you should choose

those appropriate to your own individual financial needs and risk tolerance.

You should weigh your own circumstances carefully in light of the investment objectives and risk and return characteristics of each of the investment fund options before making or changing your investment elections.

(*Id.*)

This Savings Plan as offered by the Company, is not like a traditional defined benefit pension plan where employees and/or employers make a financial contribution, these contributions are aggregated and invested by the plan to maximize return for the benefit of all employees, and the employees then receive a specified accrued benefit upon retirement. To the contrary, the Company's Savings Plan did not guarantee a fixed retirement benefit. Instead it afforded employees the opportunity to control the investment of their own contributions, potentially allowing employees to realize great gains depending on the performance of their investments.

It also allowed the Plan Participants to become employee-owners of the Company. Such a plan, that permits employees to become part owners of their employer, is known as an employee stock ownership plan ("ESOP"). *See generally* 29 U.S.C. § 1107(d)(6)(A) (defining an ESOP as a plan that invests primarily in employer's stock). "ESOP's, unlike pension plans, are not intended to guarantee retirement benefits, .... [r]ather, ESOP's serve other purposes." *Moench v. Robertson,* 62 F.3d 553, 568 (3d Cir.1995). They are devices created to save for retirement and to facilitate employee ownership of the employer. In *Moench,* the Third Circuit noted that a court must consider that the goals of an ESOP are different than other retirement plans when it reviews fiduciary duties under such plans.

Here, the Company warned all employees that an election to invest in the Stock Fund was intended for "[i]nvestors who are aware of the risk of investing in a fund that depends solely on the performance of one company." (Compl.Ex. E.) The description of the Stock Fund expressly disclosed to the Plan Participants that "[t]he return of the fund will be influenced by the pharmaceutical and related consumer markets in the United States and abroad; the United States and world economies; and the ability of management to maintain the corporation in a competitive position and continue to pay dividends." *Id.*

It is clear that the Savings Plan is a defined contribution plan with no fixed benefit, and the Stock Fund of that Savings Plan is an ESOP whose purpose was not just retirement savings, but employee ownership of the Company. It is not a traditional defined benefit pension plan. *Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090, 1097 n. 2 (9th Cir.2004) (stating that "[u]nlike traditional pension plans governed by ERISA, EIAPs [employee individual account plans]—and ESOPs in particular—are not intended to guarantee retirement benefits"). The remedies, if any, available under ERISA, therefore, are not those generally available to traditional pension plans, but are circumscribed by the plan's unique status as an individual account plan and an ESOP.

### Defendants' Motion to Dismiss

Defendants move to dismiss plaintiffs' complaint on six grounds.

Defendants' first and primary argument, attacking all counts of the complaint, is that although termed as "plan-wide" relief, plaintiffs' complaint does not in fact seek a remedy inuring to the Savings Plan, but instead seeks individualized relief for a large class of Plan Participants. Second, defendants argue that Counts One through Three should be dismissed because the

conduct of which plaintiffs complain occurred as a part of the Company's ordinary business activities and did not occur within an ERISA fiduciary context. In their third and fourth arguments, defendants contend that plaintiffs' duty to monitor claim and duty to diversify claim must be dismissed because ERISA creates no such fiduciary duties. On the latter claim, defendants point out that an ESOP by definition contains only employer stock. Defendants' fifth argument contends that plaintiffs' respondeat superior claim must fail because under ERISA a non-fiduciary can never be liable for the conduct of a fiduciary. Finally, defendants' seek dismissal of all claims against defendant Kogan, the former chief executive officer of the Company, because he was never an ERISA fiduciary against whom breach of fiduciary duty claims could be brought.

### *"Plan–Wide" Relief*

Defendants argue that Section 1132(a)(2) only creates a cause of action for breaches of fiduciary duties under ERISA running to the benefit of ERISA plans, and that the plaintiffs are actually seeking "individual relief for each Plan participant." (Defs.' Moving Br. at p. 7.) Defendants specifically cite to plaintiffs' prayer for relief which seeks "[a]ctual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses." (Compl. Prayer for Relief ¶ F.) Defendants also assert that plaintiffs' complaint does not seek relief for the plan because plaintiffs' proposed class "seeks relief only for former Schering employees," although current employees are still a part of the Savings Plan. (Defs.' Moving Br. at p. 6.)

The Court has reviewed the written submissions on defendants' motion and the arguments of both sides at oral argument, and concludes that defendants' position has merit. While carefully framed in terms of ERISA and its Section 1132(a)(2) civil remedy, plaintiffs' complaint alleges harm suffered by the individual Plan Participants and not the Savings Plan, and seeks relief measured by the harm to individuals and tailored for the benefit of individuals, and not the Savings Plan.

Plaintiffs plead in their complaint that defendants' conduct resulted in losses to the Savings Plan. (Compl. at ¶¶ 6, 129, 135, 143, 154, 163, 168, 172.) They point to individualized losses by Plan Participants and a drop in stock value as support for their claims that the Savings Plan itself suffered losses. (*Id.* at 5, 65, 109, 168.) They also indicate that they are seeking "plan-wide" relief. (*Id.* ¶¶ 6, 129.) Their Prayer for Relief indicates that this "plan-wide" relief would "restore to the Plan all profits which the *Participants would have made*" and that "[a]ctual damages in the amount of any losses the Plan suffered, to be allocated *among the Participants' individual accounts* in proportion to the accounts' losses." (*Id.* at ¶¶ C, F (emphasis added).) Additionally, plaintiffs structure their complaint as a class action brought "on behalf of themselves and all the participants and beneficiaries of the Plan who sustained losses during the relevant period" and not as a derivative suit brought on behalf of the Savings Plan. (*Id.* at ¶ 6.) *See In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 159 (3d Cir.1999) (contrasting a class action lawsuit brought under section (a)(3) seeking individual relief and a suit brought under section (a)(2) which only allows relief on behalf of the plan). In fact, plaintiffs claim that it is "plaintiffs and the other members of the Class that *each* sustained damages arising out of defendants' wrongful conduct." (Compl. ¶ 65. (emphasis added).) Plaintiffs' complaint fails to allege any facts that would indicate the Savings Plan itself sustained any losses for

which the Savings Plan, and not merely participants and beneficiaries, could obtain relief.

Nonetheless, and despite the clear scheme of the Savings Plan, which provides for individualized investment, of individualized amounts, subject to individualized control, plaintiffs insist that they are suing on behalf of "the plan" under Section (a)(2). *See generally* Compl. Ex. A § 10.09 (captioned "Individual Accounts" and requiring that Saving Plan administrators "maintain, or cause to be maintained, records showing the individual balances in each Participant's Accounts"). However, "there exists a qualitative difference between a personal claim for benefits and a contention that an ERISA trustee failed to act in the interest of the beneficiaries at all." *Moench,* 62 F.3d at 563. Although individual employees' contributions were never aggregated and all employees remained capable of investing on an individualized basis, plaintiffs now seek to theoretically aggregate these individualized losses into losses by "the plan." Such an after-the-fact aggregation by individuals in order to sue on behalf of the plan is not permitted under the language of Sections 1104, 1109 or, most importantly 1132(a)(2). *Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (stating that individual relief cannot be obtained "under the second subsection because that provision, tied to § 409, does not provide a remedy for individual beneficiaries") (emphasis omitted); *see also Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 247, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (stating that "ERISA's comprehensive and reticulated scheme warrants a cautious approach to inferring remedies not expressly authorized by the text") (*citing Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)) (quotations omitted).

During arguments, defendants themselves suggested (without conceding liability) that plaintiffs are not without a remedy if, in fact, there was any wrongdoing, but that that remedy cannot be obtained through the particular ERISA lawsuit brought by plaintiffs. The Court agrees. First, insofar as plaintiffs' claims allege corporate wrongdoing, those claims are shareholder claims in the nature of those currently being pursued in the Securities Action. Second, insofar as plaintiffs' claims allege that the poor performance of Company stock made the Stock Fund an imprudent investment alternative that should have been removed from the Savings Plan, those claims are individualized claims available only to those Plan Participants who invested in the Stock Fund and not claims that can brought on behalf of the Savings Plan as a whole. The Savings Plan itself did not invest in Company stock. The Company did not invest in Company stock for the benefit of the Savings Plan. Instead, the availability of Company stock as an investment option, was intended to be exercised on an individualized basis by each of the Plan Participants, as distinguished from the Savings Plan itself. Plaintiffs cannot state a claim under Section 1132(a)(2).

### *Recent Legal Authority*

Plaintiffs urge this Court to follow recent decisions of other district courts addressing similar claims which invoked ERISA and alleged wrongdoing that affected an employer's stock price to the detriment of employee shareholders under benefits plans. (Pl.s' Opp'n Br. at pp. 3–6.) The two cases relied upon most heavily are *In re Enron Corp. Securities, Derivative & ERISA Litig.,* 284 F.Supp.2d 511 (S.D.Tex.2003) and *In re WorldCom, Inc.,* 263 F.Supp.2d 745 (S.D.N.Y.2003).

The *Enron* litigation involves the complete collapse of the employer company resulting in worthless company stock, not merely the decline in the value of the stock of a company that continues to exist and which has the capacity to recover. *Enron* as a company was destroyed, and with it, the benefit plan. Here, the Company and the Savings Plan remain intact. Further, the *Enron* case is captioned as a "Securities, Derivative & ERISA" litigation, meaning that the litigation encompasses ERISA claims along with securities and derivative claims. Most important, the benefits plan at issue in the *Enron* case required that employee investment "will at all times be primarily invested [80% or more]" in Enron stock and that employer's contributions should be primarily in shares of its own stock. *Enron*, 284 F.Supp.2d at 549. This is in stark contrast to the Company's Savings Plan that not only permitted employees to make their own investment decisions, but expressly stated that an employee "may not elect to invest more than 50% of your Savings Plan contributions in the Schering–Plough Stock Fund." (Compl.Ex. E.)

Moreover, unlike Enron, Schering–Plough did not make employer contributions to the Savings Plan in the form of Company stock. In *Enron*, the company's investment of company stock created plan assets, assets that became worthless, making the company's contributions to the plan illusory. The plan, as such, could recover for the loss of the value of those assets. Here, the only contributions were those made by employees, which remained in individual accounts and never become assets of the Savings Plan. This critical distinction exists as well in other cases that plaintiffs rely on: *In re Sears, Roebuck & Co. ERISA Litig.*, Docket No. 02–CV–8324, 2004 WL 407007 (N.D.Ill. Mar. 3, 2004) (partially denying a motion to dismiss ERISA claims where "[e]mployer matching contributions made in cash must be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund") and *In re Dynegy, Inc., ERISA Litig.*, 309 F.Supp.2d 861 (S.D.Tex. 2004) (partially denying a motion to dismiss ERISA claims where "[t]he Plan allows Dynegy to make voluntary employer matching contributions as well as employer discretionary contributions and specifies that both shall be in Dynegy common stock").

*WorldCom*, the other case primarily relied on by plaintiffs, is readily distinguishable because the plaintiffs explicitly do not seek plan-wide relief. *WorldCom* is a class action suit that "seeks recovery for WorldCom employees who invested in WorldCom stock." *WorldCom*, 263 F.Supp.2d at 751. The plaintiffs are three named participants in the plan who brought that action "on their own behalf and on behalf of all participants in and beneficiaries of the Plan whose individual accounts held shares of WorldCom stock" during a specified period. *Id.* at 754. At one point, in order to defeat a particular claim made by defendants in their motion to dismiss, the *WorldCom* plaintiffs argued, contrary to their pleadings, that the purchases of company stock were made in connection with and by the plan and not by the individual participants themselves. The District Judge found this argument unpersuasive, stating that "[t]hroughout the Complaint, plaintiffs allege that they directed the Plan to purchase WorldCom stock on their behalf and that the Plan did purchase and retain WorldCom stock for the plaintiffs' benefit.... The Complaint starkly and repeatedly alleges that plaintiffs suffered losses due to the purchase of WorldCom stock." *Id.* at 771–72. It is clear from the opinion that the *WorldCom* case presents ERISA claims made by *in-*

*dividual* plan participants and not claims for plan-wide brought on behalf of the plan itself. Plaintiffs' reliance upon *WorldCom* is, therefore, misplaced.

### Plan-wide Relief Is Not the Goal of this Complaint

Ultimately, despite using terms that describe relief on behalf of the Savings Plan, the substance of these plaintiffs' allegations indicate that their sought-after "plan-wide" relief inures only to the benefit individual Plan Participants who are members of the yet-to-be-certified plaintiff class. *See* Compl. ¶ 31 (stating that "[t]he relief requested in this action is for the benefit of the Plan and its participants/beneficiaries"). *Cf.* Compl. ¶ 62 (stating that "[p]laintiff brings this action as a class action ... on behalf of himself/herself and ... persons similarly situated"). Plaintiffs have failed to meet defendants' argument by demonstrating that they can obtain relief for the benefit of the plan, as opposed to the participants individually. *Alexander v. Whitman*, 114 F.3d 1392, 1397 (3d Cir.1997) (stating that dismissal is proper "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations"). They have failed to present any facts that would indicate that the Savings Plan itself could obtain any of the relief sought in this suit.

Examining the Complaint as carefully as possible, the specific relief that plaintiffs seek include: declaratory judgments (one stating that the defendants breached their fiduciary duties and a second stating that defendants are not entitled to certain limitations of liability under ERISA); an injunction (enjoining future ERISA breaches); money (through restoration of lost profits, imposition of a constructive trust over alleged ill-gotten gains of fiduciaries, and "equitable restitution"); and attorneys' fees and costs of suit. (Compl.

Prayer for Relief.) An award of attorneys' fees and costs is not a specific remedy available on a claim of breach of fiduciary duties under Section 1132(a)(2), but is generally available in an ERISA action under Section 1132(g). Defendants' motion does not address this particular prayer for relief, seeking instead to dismiss plaintiffs' substantive claims, which, if dismissed, would then make plaintiffs' fee and costs application moot. The Court, therefore, need only determine whether the other relief sought by plaintiffs' can properly be obtained through a suit brought under Section 1132(a)(2).

Plaintiffs seek two judicial declarations, both relating exclusively to Section 1104. Whether or not declaratory relief is a permissible remedy is dictated by Section 1109, which defines the remedies available in causes of action under Section 1104. Section 1109 provides that:

> The fiduciary is personally liable for damages ("to make good to [the] plan any losses to the plan resulting from each such breach"), for restitution ("to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary"), and for "such other equitable or remedial relief as the court may deem appropriate," including removal of the fiduciary.

*Mertens v. Hewitt Assoc.*, 508 U.S. 248, 252–53, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (alterations in original) (quotations omitted). Because a declaratory judgment is neither damages or restitution, in order for such a remedy to be available to plaintiffs it must fall within the scope of "such other equitable or remedial relief as the court may deem appropriate." *Id.* (emphasis added).

To determine what relief may be appropriate, this Court must consider the "policy choices reflected in the inclusion of

certain remedies and the exclusion of others under the federal scheme" created by Congress in enacting ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "Through express textual provisions of ERISA [ ] Congress has provided only limited remedies .... [and] it is not the job of this court to second guess Congress's judgment in these matters." *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1170 (3d Cir.1990). This Court may not "engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). "This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (referring to the "six carefully integrated civil enforcement provisions" of Section 1132(a)).

Section 1132(a)(1)(B), "allows a beneficiary or participant of an ERISA regulated plan to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 271 (3d Cir.2001) (quoting 29 U.S.C. § 1132(a)(1)(B)) (emphasis added). Under section (a)(1)(B) "'[r]elief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.'" *Pennsylvania Psychiatric Soc. v. Green Spring Health Serv., Inc.,* 280 F.3d 278, 281 n. 2 (3d Cir.2002) (quoting *Dedeaux,* 481 U.S. at 53, 107 S.Ct. 1549); accord *Pryzbowski,* 245 F.3d 266, 272. Section 1132(a)(1)(B), which permits a suit "to clarify" ERISA rights, undoubtedly allows for declaratory relief. In such an instance, the declaratory judgment relates to an individualized right to pension benefits.

■ Here, plaintiffs have not brought suit under Section 1132(a)(1)(B), but instead invoke Section 1132(a)(2) to bring claims on behalf of the Savings Plan. In contrast to (a)(1)(B), Section 1132(a)(2) does not speak of clarification of rights, remedies for individuals, or remedies relating to rights to benefits, but speaks only in terms of remedies available to a plan for breach of fiduciary duties. "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied" prevents this Court from creating remedies not expressly provided by the text of the statute. *Dedeaux,* 481 U.S. at 53, 107 S.Ct. 1549. This is particularly true where Congress sought fit to include a remedy in one provision of Section 1132, but elected not to include that same remedy in another provision of that same section.

This Court's "task is to apply the text, not to improve upon it." *Hozier,* 908 F.2d at 1170 (quoting *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989)). In applying the text of Section 1132(a)(2), it is clear that although a portion of Section 1109 permits "other equitable or remedial relief as the court may deem appropriate," 29 U.S.C. § 1109(a), "when the entire section is examined, the emphasis on the relationship between the fiduciary and the plan as an entity becomes apparent." *Russell,* 473 U.S. at 140, 105 S.Ct. 3085. The key players under section (a)(2) are the fiduciary and the plan. Although

plaintiffs' sought after declaratory judgment is directed at the fiduciaries, it is not sought for the benefit of the plan. Plaintiffs seek "a Declaration that the defendants, and each of them, have breached their ERISA duties to the Participants." (Compl. ¶ A (emphasis added).) Even if a declaratory judgment were an available remedy under Section 1132(a)(2), the declaration sought by plaintiffs would not inure to the benefit of the Savings Plan. This Court does not deem such a declaration to be appropriate equitable or remedial relief for the benefit of the Savings Plan under Section 1109.

Plaintiffs also seek "a Declaration that the defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B)." (*Id.* ¶ B.) Section 1104(c)(1)(B) states that a fiduciary shall not be liable for any loss resulting from a plan participant's exercise of control over investments when the retirement plan at issue "provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account." 29 U.S.C. § 1104(c)(1); *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 442 (3d Cir.1996) (stating that "[b]y its terms, section 1104(c) relieves fiduciaries of liability for breaches of fiduciary duty which result from a participant's or a beneficiaries exercise of control").

■ This request for declaratory relief is neither equitable nor remedial, but preemptively defensive. Although there are some instances where a preemptive request for declaratory judgment is proper, the facts here do not present such an instance. Declaratory judgment may be proper "where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek,* 72 F.3d 1148, 1154 (3d Cir.1995) (emphasis added); *see Step–Saver Data Sys., Inc. v. Wyse Tech.,* 912

F.2d 643, 647 (3d Cir.1990) (stating that a court has the "discretionary power to determine the rights of parties before injury has actually happened"). Here, plaintiffs ask this Court to declare that a limitation on liability, potentially available to defendants, does not apply. The declaratory judgment plaintiffs seek relating to Section 404(c) does not address harm, but addresses liability. By the time that section (c) is triggered, the harm has already occurred and the only issue is allocation of liability for that harm. The second declaratory judgment sought by plaintiffs is, therefore, not appropriate equitable or remedial relief under Section 1109. Neither of the declarations sought by plaintiffs are available remedies under Section 1132(a)(2).

■ Plaintiffs also request an injunction, seeking to enjoin each of the defendants "from any further violation of their ERISA fiduciary obligations." (Compl.¶ E.) This remedy, however, would do nothing more than require the defendants to obey the law, something that they are already bound by ERISA to do. This Court lacks the authority to enter such a blanket injunction. *Louis W. Epstein Family Partnership v. Kmart Corp.,* 13 F.3d 762, 771 (3d Cir.1994) (stating that an injunction "that merely enjoins a party to obey the law ... does not give the restrained party fair notice of what conduct will risk contempt" and is therefore improper); *accord Glover Const. Co., Inc. v. Babbitt,* 172 F.3d 878 (10th Cir.1999) (stating that where "injunctive relief is nothing more than an artfully phrased prayer for the court to require [defendant] to obey the law in the future[,][s]uch injunctions are not appropriately issued"); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 51 (2d Cir.1996) (stating that "an injunction must be more specific than a simple command that the defendant obey the law"); *Hughey v. JMS Dev. Corp.,* 78 F.3d 1523,

1531 (11th Cir.1996) (noting that "appellate courts will not countenance injunctions that merely require someone to 'obey the law'") (*quoting Payne v. Travenol Lab., Inc.*, 565 F.2d 895, 897–98 (5th Cir.), *cert. denied*, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978)); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir.1987) (stating that "an injunction that essentially requires a party to obey the law in the future is not encouraged"). *See generally* Fed.R.Civ.P. 65(d) (requiring that an injunction "be specific in terms" and "describe in reasonable detail ... the act or acts sought to be restrained"). Plaintiffs' sought after injunction, seeking to enjoin defendants from "any" violations of ERISA, is not a proper remedy. Where the remedy sought is improper and it cannot be obtained under any set of facts, dismissal is appropriate. *Alexander v. Whitman*, 114 F.3d 1392, 1397 (3d Cir.1997).

This leaves only plaintiffs' prayer for money damages. Plaintiffs frame this request in terms of three types of relief: (1) imposition of a constructive trust upon moneys held by the defendants for which plaintiffs claim defendants were unjustly enriched; (2) an award of actual damages equal to the amount of loss of the value of the Company's stock during the class period (together with a corresponding court order that those losses be allocated among the Plan Participants); and (3) "equitable restitution and other appropriate equitable monetary relief." (Compl.¶¶ C, D, F, G, J.) Where there is a breach of a fiduciary duty, Section 1109 provides that the fiduciary is liable for damages, for restitution, and for such other appropriate equitable or remedial relief as the court sees fit, and "29 U.S.C. § 1132(a)(2)—the second of ERISA's "six carefully integrated civil enforcement provisions," allows ... any plan beneficiary, participant, or fiduciary to bring a civil action "for appropriate relief under section [1109]." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 252–53, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (quotations omitted). Plaintiffs have invoked section (a)(2) and have requested monetary relief available under Section 1109.

Plaintiffs' first and third claims for monetary relief, seeking imposition of a constructive trust and equitable restitution, are functionally equivalent. *See generally Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 457 n. 3 (3d Cir.2003) (stating that equitable restitution ordinarily comes in the form of a constructive trust). Here, the amounts that plaintiffs claim were ill-gotten by defendants and resulted in their unjust enrichment relate to "defendants [sic] sale of significant portions of personal holdings of Schering stock during the fiscal [sic] 2000—before the publication of Schering's true financial and operational health." (Compl.¶ 163.) Essentially, plaintiffs seek to compel the defendants, who "profited" from the sale of their own stock prior to their drop in value, to restore to the Plan Participants those "profits" that the participants could have made but did not because they did not sell their stock before the value fell.

 Plaintiffs cannot, however, under section (a)(2), obtain this remedy of equitable restitution under any set of facts consistent with their allegations. A constructive trust is proper relief under ERISA "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (emphasis added); *accord Horvath*, 333 F.3d at 457 n. 3 (noting that restitution is only appropriate where funds are "readily traceable"). Here, plaintiffs complaint is

brought on behalf of the Savings Plan under Section 1132(a)(2). Plaintiffs have not, however, alleged that any "particular funds or property" of the Savings Plan are now "in the defendant's possession." *Great–West*, 534 U.S. at 213, 122 S.Ct. 708.

▪ Plaintiffs seek to recover profits made by defendants "through use of assets of the plan," but point to no plan assets that defendants ever possessed from which profits could be made. 29 U.S.C. § 1109(a). Defendants held their own shares of Company stock, sold those shares, and made their profits on those shares. They did not hold the Savings Plan's shares (or any individual Plan Participant's shares for that matter), they did not sell any such shares, and they did not profit from the sale of any of those shares. In fact, the crux of plaintiffs' complaint is that they continued to hold onto Company stock as its value fell. It is impossible for plaintiffs to continue to hold those shares at the same time as those shares were "in the defendants['] possession." Plaintiffs cannot obtain restitution from this Court to restore funds to the Savings Plan where they are unable to pin down, much less quantify, those funds, or demonstrate that those funds (or the assets from which the funds were derived) were ever before a part of the Savings Plan's assets but now in the possession of the defendants. *See generally Coar v. Kazimir*, 990 F.2d 1413, 1420 (3d Cir.1993) (stating that section 1109(a) "expressly states that the trustee who violates a fiduciary duty to the plan must make good to the plan"); *see also Landwehr v. DuPree*, 72 F.3d 726, 733 (9th Cir.1995) (noting that "one of the primary purposes of ERISA [is][t]o protect pension plans from looting by unscrupulous employers and their agents").

Nevertheless, plaintiffs would like this Court to compare the value of the Company stock at the time the defendants sold their shares to the value of the stock held by the Plan Participants at its lowest point and calculate that difference as ill-gotten profit that unjustly enriched the defendants. Even if such a calculation and imposition of a constructive trust over such an amount were proper, it is not a remedy that can be sought in this suit under Section 1132(a)(2). Plaintiffs cannot seek recovery for each Plan Participant's lost "profits," because Section 1132(a)(2) does not provide for individualized relief.

Even if such relief were proper, which it is not, the allegations of plaintiffs' complaint fail to show, under any set of facts consistent with the pled allegations, that the defendants are in possession of the assets of or profits from the Plan Participants' individual accounts. Plaintiffs made contributions only to their own individual accounts and there is no allegation that the defendants were the payees of those contributions or ever looted the Plan Participants' contributions and stock holdings from their individual accounts. *See* 29 C.F.R. § 2510.3–102(a) (defining plan assets to "include amounts ... that a participant or beneficiary pays to an employer"). Ultimately, even if plaintiffs had made these allegation, they would still be seeking recovery of individualized losses and not a loss to the Savings Plan.

Most importantly, "ERISA does no more than protect the benefits which are due to an employee under a plan." *Bennett v. Conrail Matched Sav. Plan*, 168 F.3d 671, 677 (3d Cir.1999); *see also Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (stating that "ERISA does not create any substantive entitlement to employer-provided [ ] benefits"). Under the Company's benefit plan, there is no entitlement to profitable Company stock. Plaintiffs cannot seek to recover profits, it claims are losses, when those profits were

never due under the Company's Savings Plan. Because plaintiffs have not pled, and based upon the Savings Plan's status as an individual account plan (as opposed to a defined benefit plan) cannot plead, that defendants are in possession of funds that are traceable to the Savings Plan, plaintiffs cannot obtain relief in the form of a constructive trust or equitable restitution.

This leaves, as the only potentially viable prayer for relief that may inure to the Savings Plan, an award of damages for losses. ERISA "requires plaintiffs to prove losses for any breach of fiduciary duty claim." *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 159 (3d Cir.1999). At this motion to dismiss stage, plaintiffs need not prove their damages *per se*, but must point to at least some allegations from which this Court could grant the sought-after relief. *See Alexander v. Whitman*, 114 F.3d 1392, 1397 (3d Cir.1997) (stating that dismissal is proper "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations").

As previously discussed at length, even viewing plaintiffs' complaint in light most favorable to plaintiffs, the pleading fails to allege any set of facts from which this Court could find losses to the Savings Plan. Even assuming that each defendant is an ERISA fiduciary, that each of plaintiffs' allegations concerning defendants' conduct were true, and that this conduct rose to a level to breach ERISA's fiduciary duties (without the Court opining as to merits of these assumptions), plaintiffs cannot demonstrate how any defendant would be "personally liable for damages ('to make good to [the] plan any losses to the plan resulting from each such breach')" to the Saving Plans because it is only Plan Participants who might be able to show that they suffered individualized losses. *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 252–53, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (*quoting* 29 U.S.C. § 1109(a)).

Additionally, the terms of the Savings Plan itself could not be more clear that employees and not the defendants exercise complete control over their investments. There is an inherent inconsistency in alleging that each Plan Participant exercises control over his/her account and that each account balance was independent of all others, but that defendants nonetheless should be liable to the Savings Plan as a whole for losses that resulted from Plan Participants' investment decisions and which affected only their own individual accounts. The Savings Plan documents to which plaintiffs refer in their complaint state that "[e]ach participant is solely responsible for the selection of his or her investment options" and provides that "[a] participant may change his or her investment election ... by giving Notice." (Compl. Ex. A § 4.03–4.04 (emphasis added); *see also* § 10.08 (stating that "[t]he Investment Committee shall have no responsibility as to investment decisions respecting Plan Accounts").)

Even assuming *arguendo* that defendants fully and fairly informed the Plan Participants of each and every factor that might have affected the Company stock's value, the ultimate decision of whether to hold or sell the Company stock remained solely with the Plan Participants. Even if the Company had eliminated Company stock as an investment option under the Savings Plan, all of the Plan Participants who had already invested in Company stock had the sole discretion whether to keep their contributions invested in Company stock or make an election to change funds. These are individualized decisions affecting individual accounts. These are not fiduciary decisions by the defendants that affect the Savings Plan as a whole

that could result in losses to the plan for which damages might be recoverable.

Section 1109 creates liability for a fiduciary breach only for the benefit of the plan. Although plan participants and beneficiaries can bring suit on the plan's behalf, it is nonetheless only "losses to the plan" that are recoverable. Here, plaintiffs cannot demonstrate any losses to the plan, because the Company's Savings Plan is an individual account plan, which includes an ESOP investment alternative. Any potentiality for loss is only to individual participants and is based solely upon their particular independent investment choices, including their choice to become owner-employees of the Company. Each count of plaintiffs' complaint, based entirely upon purported breaches under Section 1104 and brought only under Section 1132(a)(2), must be dismissed for failure to state a claim. Based upon the allegations made in the complaint, as well as argument made to the Court, plaintiffs can point to no set of facts that would demonstrate losses to the plan. They cannot obtain relief inuring to the plan. Defendants' argument is proper and persuasive and requires that they prevail on the motion.

Based upon the foregoing, which disposes of plaintiffs' complaint in its entirety, the Court need not reach defendants' further arguments in favor of dismissal.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted and plaintiffs' complaint is dismissed. An appropriate order will be entered.