Karen BURKE, Plaintiff,

v.

A. Neal GREGORY, M.D. and Upper Hudson Valley Dermatology, P.C., Defendants.

No. 1:04CV0075LEKRFT.

United States District Court, N.D. New York.

Feb. 14, 2005.

Clay Lodovice, Gleason, Dunn Law Firm, Albany, NY, for Plaintiff.

Jill C. Lesser, Office of Jill C. Lesser, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER [1]

KAHN, District Judge.

## I. BACKGROUND

Plaintiff Karen Burke ("Plaintiff") brought the instant action against her former employer, Dr. A. Neil Gregory, M.D. ("Gregory") and his dermatology practice, Upper Hudson Valley Dermatology, P.C. ("UHVD"), (collectively "Defendants"), alleging that she is entitled to additional pay and benefits arising out of their now terminated employment relationship. Specifically, she asserts seven causes of action which generally claim that: (1) Defendants have failed to pay contributions for the year 2001 to the UHVD Profit Sharing Plan and Trust ("Profit Sharing Plan"), the UHVD Money Purchase Pension Plan and Trust ("Money Purchase Plan"), and the UHVD Defined Benefit Pension Plan and Trust ("Defined Benefit Plan") [2], (collec-

---

1. For printed publication in the Federal Reporter.

2. Plaintiff refers to this plan as the "Deferred" Benefit Pension Plan and Trust. It appears from documents submitted by Defendants that the proper name is the "Defined Benefit Pension Plan and Trust," and the Court will refer to it as such.

tively "Plans"), in violation of ERISA, Complaint (Dkt. No. 1) at ¶¶ 31–45, (2) the Plans' administrator has failed to provide documents to Plaintiff, as per her request, entitling her to $110.00 per day pursuant to 29 U.S.C. § 1132(c), Complaint (Dkt. No. 1) at ¶¶ 46–51, (3) Plaintiff was terminated from her position based upon her requests for information relating to the Plans in violation of Section 510 of ERISA, codified at 29 U.S.C. § 1140, Complaint (Dkt. No. 1) at ¶¶ 52–57, and (4) Defendants breached the parties' employment contract entitling Plaintiff to unpaid commissions, accrued vacation credits, and unpaid wages under New York Labor Law and state contract law, Complaint (Dkt. No. 1) at ¶¶ 20–30.

Presently before the Court is Defendants' motion to dismiss the action pursuant to Federal Rule of Procedure 12(b)(6). Defendants move to dismiss the federal claims, contending that (1) Plaintiff's claim that she was entitled to payment under the Plans in 2001 must fail, as she was not employed on the last day of the year as is required by the Plans' terms, Def. Memo. (Dkt. No. 5) at 4–5; (2) Plaintiff lacks standing to seek civil penalties arising from the alleged failure to provide information about the Plans because she has accepted full payment of her entire benefit under the Plans and is therefore no longer a "participant," as that term is defined in 29 U.S.C. § 1002(7), *Id.* at 7–8; (3) Plaintiff's claim brought pursuant to § 1140 must fail because she resigned her position and was not fired, therefore she cannot demonstrate that her termination was motivated by her inquiries relating to the Plans, *Id.* at 5–7.

Defendants also move to dismiss the state claims based on the merits of those claims. However, because the Court will dismiss those federal claims that may have arisen from the same set of facts and circumstances as the state claims, as ex-plained below, it will not retain jurisdiction over the state claims, and therefore will dismiss them without considering the merits.

**(a) Burke's employment history at UHVD**

Plaintiff was hired in 1991 by Gregory to be the office manager at UHVD, his dermatology practice. Complaint (Dkt. No. 1) at ¶¶ 11–12. As an employee of UHVD, Plaintiff was entitled to participate in the Plans. She left the employment of UHVD in September 2001. Sept. 18, 2001 Letter (Dkt. No. 6, Ex. 3).

Defendants contend that in September 2001, Plaintiff resigned from her position at UHVD because the terms of her employment were altered. Def. Memo. (Dkt. No. 5) at 7. As evidence of this fact, Defendants point to the letter that Plaintiff wrote to Gregory, dated September 18, 2001. Sept. 18, 2001 Letter (Dkt. No. 6, Ex. 3). The letter explains that on September 7, 2001, Gregory had announced that he had hired a new CEO for UHVD and that "many changes were to be made in the practice. . . ." *Id.* After meeting with Gregory on September 10, 2001, Plaintiff explained her understanding of her UHVD employment situation:

> I realized I no longer had my position of Business Office Administrator, in other words, a demotion. After ten years of service to this practice I felt a demotion was unfair. I said that a demotion was unacceptable, I will resign.
>
> *Id.*

When she attempted to resign her position, the new CEO asked her to reconsider her decision to leave UHVD. *Id.* She then gave her two-week notice "so [she] would not jeopardize any pay, including salary, profit share, and paid vacation time." *Id.* The new CEO informed her that "nothing was in jeopardy." *Id.* On September 17,

2001 the CEO asked Plaintiff to return to work three days per week or evenings to do accounts receivables and billing work. *Id.* Plaintiff "declined the offer." *Id.* Defendants also point out that the fact that she resigned from her position is consistent with the finding of the New York State Department of Labor which concluded that she quit her position and was therefore entitled to unemployment benefits.[3] Def. Memo. (Dkt. No. 5) at 7; N.Y. Dep't of Labor Unemployment Compensation Determination (Dkt. No. 6, Ex. 3).

Plaintiff objects to the characterization that she quit her job and instead contends that she was fired from UHVD because "Defendants effectively terminated her position." Complaint (Dkt. No. 1) at ¶ 37; Plaintiff's Memo. (Dkt. No. 14) at 2.

## II. DISCUSSION

### (a) Motion to dismiss standard

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) must be denied "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988).

[C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in Plaintiffs' possession or of which Plaintiffs had knowledge and relied on in bringing suit.

*Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, are insufficient to state a claim. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is loath to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him to relief. *See Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982); *Egelston v. State Univ. Coll.,* 535 F.2d 752, 754 (2d Cir.1976).

### (b) Entitlement under the Plans

Plaintiff's Complaint claims that she is entitled to payment under the Plans for the year 2001, the year in which her employment situation was altered. The Court will consider each individually.

#### (i) Profit Sharing Plan

 Plaintiff participated in the Profit Sharing Plan, Complaint (Dkt. No. 1) at

---

**3.** Defendants cite to this finding, even though they apparently defaulted by failing to appear in that proceeding.

¶ 32, which advises participants that it is subject to the provisions of ERISA, Profit Sharing Plan Summary (Dkt. No. 1, Ex. 2) at 20–21. The Profit Sharing Plan is intended to "recognize the hard work and good efforts of [Gregory's] employees" and although employees do not make their own contributions, each year, Gregory "*may* make a contribution to the Plan" on behalf of the employee. *Id.* at 1 (emphasis added).

The Profit Sharing Plan Summary further provides that "[i]n order to receive the Employer's Contribution, you *must* have worked 1,000 hours during the Plan year, *and* be employed on the last day of the Plan Year." *Id.* at 5 (emphasis added). Article IV also explains the calculation for the employer contributions. *Id.* In the present case, it is undisputed that Plaintiff left the employment of UHVD in September 2001 and therefore was not employed on the last day of 2001. Under the terms of the Profit Sharing Plan, Plaintiff is not entitled to payment for 2001 and that claim, as set forth in her Fourth Cause of Action, must be dismissed. Complaint (Dkt. No. 1) at ¶¶ 31–40.

### (ii) Money Purchase Plan

Plaintiff contends that she is also entitled to payment under the Money Purchase Plan, but that she has not received the requested documents that explain the terms of that Plan. Complaint (Dkt. No. 1) at ¶ 32. In support of their motion to dismiss, Defendants have now submitted the Money Purchase Plan Summary for the Court's review. Money Purchase Plan Summary (Dkt. No. 6, Ex. 5).

The Summary of the Money Purchase Plan demonstrates that the terms of this plan are similar to those of the Profit Sharing Plan. The Money Purchase Plan,

which is subject to ERISA's protections, is also intended to "recognize the hard work and good efforts of its employees ..." and does not require employees to contribute to the plan. *Id.* at 1. Article IV specifically states:

> Each year, your Employer will make a contribution to the Plan, on the behalf of the eligible Plan Participants. In order to receive the Employer's Contribution, you *must* have worked 1,000 hours during the Plan Year, *and* be employed on the last day of the Plan Year.
> *Id.* at 4.

As explained above, it is undisputed that Plaintiff was not employed on the last day of 2001. Therefore, under the terms of the Money Purchase Pension Plan, she is not entitled to a benefit in that year, and that claim, as made in her Fourth Cause of Action, must be dismissed. Complaint (Dkt. No. 1) at ¶¶ 31–40.

### (iii) Defined Benefit Plan

■ With respect to the Defined Benefit Pension Plan and Trust, Plaintiff asserted, in her Fifth Cause of Action, that Defendants failed to pay required contributions on her behalf. Complaint (Dkt. No. 1) at ¶¶ 41–45.

In support of the present motion, Defendants submitted the "UHVD Defined Benefit Pension Plan—Calculation of Accrued Benefit worksheet." (Dkt. No. 6, Ex. 8). Defendants contend that this document "establishes that Plaintiff's benefits were calculated including her full employment term."[4] Def. Memo. (Dkt. No. 5) at 5. In replying to Defendants' motion to dismiss, Plaintiff acknowledged that "[f]or the Defined Benefit Pension Plan of [UHVD], benefits were paid for the year 2001."

---

4. That document specifies the "Years of Participation—2 (2000 & 2001)." *Id.* It also states the "Accrued Monthly Benefit—2% times $ 5014.95 times 2 years = $200.60." (Dkt. No. 6, Ex. 8).

Plaintiff's Mem. (Dkt. No. 14) at 10. Therefore, her claim that she is entitled to compensation under this plan must be dismissed.

Although Plaintiff contends that her "entitlement to benefits for 2001 should be equally applicable for the Profit Sharing Plan and Trust and the Money Purchase Pension Plan and Trust" as her entitlement to benefits under the Defined Benefit Plan, Plaintiff's Memo. (Dkt. No. 14) at 10, her position is without merit. As set forth above, each of the Plans has its own terms. The terms of the Profit Sharing Plan and the Money Purchase Plan are clear and the terms of the Defined Benefit Plan do not govern these other two.

**(c) Damages for failure to provide plan documents**

Plaintiff's Sixth Cause of Action seeks damages for Defendants' failure to provide documents related to the Plans. In relevant part, 29 U.S.C. § 1024(b)(4) states:

The administrator shall, upon written request of any participant ..., furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

If an administrator fails to furnish this information upon the request of a participant within 30 days, the participant may bring a claim pursuant to 29 U.S.C. § 1132(c) which provides that a court has discretion to require the plan's administrator to pay civil penalties of up to $100 per day to that participant.

In her letter of resignation, dated September 18, 2001, Plaintiff informed Defendants that she was then "entitled to [her] pension reports for the year 2000." (Dkt.

No. 6, Ex. 3) at 2. Plaintiff also submitted a copy of a letter dated January 15, 2002 that she sent certified mail to Gregory at UHVD. (Dkt. No. 1, Ex. D). The January 15 letter requests information for the years 1999–2001 related to the Money Purchase Plan, Profit Sharing Plan, and Defined Benefit Plan. *Id.* Specifically, the letter requests:

(1) the summary plan description (SPD)

(2) the plan document

(3) the trust agreement setting up the plan

(4) any collective bargaining contract

(5) any other instrument under which the plan was established or is operated

(6) summary of material modifications (SMM)

(7) Annual Report Form 5500 / 5500C / 5500R

(8) Individual benefit statement

*Id.*

As an initial matter, Plaintiff's request for these documents was proper, pursuant to § 1024(b)(4). Plaintiff contends that, although she made the written requests as just described, she never received those requested documents, and therefore, is entitled to civil penalties pursuant to § 1132.

Defendants have moved to dismiss this claim alleging that Plaintiff has no standing to bring a claim under § 1132 because she is not currently a "participant," as that term is defined in 29 U.S.C. § 1002(7).[5] Def. Mem. (Dkt. No. 5) at 7–8. Defendants assert that Plaintiff is no longer a "participant" because at the time she filed this action, she had received her entire benefit under each of the Plans.

■ As explained above, Plaintiff made her written requests for Plan documents

---

**5.** Section 1002(7) defines "participant" as "any employee or former employee of an employer, ..., who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ...."

on September 18, 2001, and January 15, 2002. At that time, she had not received payout of her vested benefits.[6] Because she had a "colorable claim" to Plan benefits when she made her request for documents, she was then a "participant" within the meaning of the statute. *See McFaul v. Loews Corp.,* 1993 WL 541778, \*\*3–4, 1993 U.S. Dist. LEXIS 18261, \* 7–8 (S.D.N.Y. Dec. 30, 1993) (explaining that the term "participant" includes "former employees who ... have a colorable claim to vested benefits ....") (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal citations omitted)).

Courts in other circuits have explained that to bring a claim under § 1132, a plaintiff must be a participant at the time that claim is filed, not just at the time the ERISA violation occurred. *See, e.g., Raymond v. Mobil Oil Corp.,* 983 F.2d 1528 (10th Cir.1993) (holding that the definition of "participant" does not include a former employee who has received a lump sum payment of his benefits because such individuals have received the full extent of their benefits and are no longer eligible to receive future payments). However, a district court in this circuit recently considered this issue and determined that while "many federal courts have denied participant standing to former employees such as [plaintiff] where the plans in question have been terminated and their assets have been fully disbursed via lump sum distributions," the Second Circuit has not expressly addressed the issue. *Coan v.*

*Kaufman,* 333 F.Supp.2d 14, 19 (D.Conn. 2004) (collecting cases). The district court noted that "[w]hile it would seem sensible to this Court to require a plaintiff ... to bring her lawsuit before she ceased employment and before the plans in question were terminated and she accepted a lump sum distribution under the plans, there is support in the Second Circuit case law for [plaintiff's] broad 'zone of interest' approach to ERISA standing." *Id.* at 21–22. The court, although it ultimately dismissed the claims on other grounds and determined that it need not come to a conclusion on the issue of standing, explained:

> [Plaintiff] has asserted colorable claims of breaches of fiduciary duty by Defendants that fall well within the zone of interests that ERISA is intended to remedy. In those circumstances, denying ERISA standing to [plaintiff] ... who unquestionably was a participant and employee at the time of the breaches of fiduciary duty that are alleged in this case, and who brought suit to remedy those breaches within the relevant statute of limitations for such claims— would appear to run counter to Congress' intent to "remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants."

*Id.* at 23.

This view, which would grant standing in this case, is consistent with the idea that

---

**6.** Although the Court cannot ascertain from the Complaint the date on which Plaintiff was actually allowed to withdraw her vested benefits from the Plans, Plaintiff notes that "[i]t took over two years from Plaintiff's termination from employment to receive any release of vested pension funds." Plaintiff's Mem. (Dkt. No. 14) at 4. She also stated that Defendants *"finally allowed* [Plaintiff] to withdraw vested monies from the UHVD Plans."

Plaintiff's Mem. (Dkt. No. 14) at 9. Such statements indicate that she was not permitted to withdraw her vested monies upon her initial request. Additional proof of this fact is that Plaintiff signed the Defined Benefit Plan Participant Release and Consent to Lump Sum Payment on September 25, 2003, approximately two years after she resigned from her position.

§ 1132 is a penalty. The payment envisioned by § 1132(c) is a "penalty," as demonstrated by that section's title, and is intended to impress upon the administrator the importance of promptly supplying plan participants with information related to their pension benefits. The focus is on the actions of the administrator in failing to dispense the requested information, not on the plaintiff's actions:

> The penalty contained in § 1132(c) was designed to induce compliance with information requests by plan participants and beneficiaries. When a plan representatives [sic] are completely indifferent to reasonable requests for plan and benefit information, a district court, in its discretion, may impose a penalty, even absent 1) a showing of bad faith on the part of the plan representatives, and 2) a showing of prejudice cause by the lack of prompt disclosure.
>
> *Damon v. Unisys Corp.*, 841 F.Supp. 1094, 1097 (D.Col.1994) (quoting *Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 894 n. 4 (10th Cir. 1988)).

The fact that Plaintiff filed this suit seeking damages pursuant to § 1132 once she had received payment of her vested benefits does not require the Court to dismiss this claim. In determining whether a participant is entitled to penalties under § 1132, courts in this circuit have considered: (1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant. *McConnell v. Costigan*, 2002 WL 1968336, *2, 2002 U.S. Dist. LEXIS 15826, *6 (S.D.N.Y. Aug. 23, 2002) (citations omitted). Therefore, the fact that Plaintiff ultimately received payout of her vested benefits should not preclude the Court from awarding a penalty pursuant to § 1132 for the period during which she was deprived of the information she had requested if there is evidence that these other factors have been met.

That a penalty may still be appropriate is especially true considering the information now before the Court. It appears that in this case, Defendants did not release some of the requested documents until they moved to dismiss this litigation, more than two years after Plaintiff's written request. *See* Plaintiff's Memo. (Dkt. No. 14) at n. 4 ("In fact, Defendants only now attach ... some of the documents it would not produce over the last three years."). Because the Second Circuit has not addressed this issue, Plaintiff has standing in this case and the Court will not dismiss her claim pursuant to § 1132. The view that standing exists even where the plaintiff has received a payout of vested benefits is consistent with the idea that § 1132 is a penalty that should focus on the actions which violate ERISA and not on whether the participant ultimately received her vested benefits.

### (d) Termination in violation of ERISA

In her Seventh Cause of Action, Plaintiff alleges that she was terminated from employment at UHVD "due to her requests for information" relating to the Plans in violation of Section 510 of ERISA, codified at 29 U.S.C. § 1140. Complaint. (Dkt. No. 1) at ¶¶ 54, 56. Defendants move to dismiss this claim because they contend that Plaintiff has not demonstrated that Defendants' termination of her employment was motivated by her inquiry. Def. Memo. (Dkt. No. 5) at 5–7. Rather, they contend that, by her own admission in her September 18, 2001 letter, she *resigned* from her position at UHVD because the terms of her employment were altered. Def. Memo. (Dkt. No. 5) at 6–7.

*(i) Evidence required for a claim under
29 U.S.C. § 1140*

█ Section 1140 states that "[i]t shall be unlawful for any person to discharge ... a participant ... for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...." 29 U.S.C. § 1140. To sustain a claim under § 1140, it is not enough to show that the employee has been deprived of the opportunity to accrue additional benefits as a result of the termination of employment, but a plaintiff must also show that the denial of the benefits was a motivating factor behind the termination. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 906 (2d Cir.1997) (citing to *Dister v. Cont'l Group,* 859 F.2d 1108, 1111 (2d Cir. 1988)) (granting summary judgment and dismissing claim where employee did not make a prima facie case because he presented no evidence that denial of pension benefits was a motivating factor in the termination).

*(ii) Plaintiff's claim under § 1140*

█ In the present case, Plaintiff claims that she was terminated due to her requests for information under the Plans. Complaint (Dkt. No. 1) at 8. In replying to the motion to dismiss, Plaintiff also contends that in the summer of 2001, she brought it to Gregory's attention, as he was the Plans' administrator, that the required federal documents had not been filed since 1999. Plaintiff's Memo. (Dkt. No. 14) at 7. Some time after her discussion with Gregory regarding the Plan documentation, Burke's employment situation was altered. *Id.*

This claim must be dismissed because Plaintiff contends that she made an inquiry related to the Plans, but she has not alleged any facts to demonstrate that her termination from her employment at UHVD was motivated by Defendants' desire to deprive her of benefits under the Plans or in retaliation for such inquiries. Plaintiff's letter states that, on September 7, 2001, prior to the change in her employment position, UHVD employees were informed that there would be a change of CEO, accompanied by "many changes ... in the practice." Sept. 18, 2001 Letter (Dkt. No. 6, Ex. 3) at 1. With those changes, Plaintiff was not terminated by UHVD because, although it may have been in a less desirable position, she was offered continued employment at UHVD. *See id.* Rather, Plaintiff made the decision to leave UHVD on her own, as evidenced by the admission in her September 18, 2001 letter to Gregory in which she stated that she "will resign" because "a demotion was unacceptable." *Id.* Additionally, that letter, which contains her own version of the events surrounding the dissolution of her UHVD employment, states nothing about being demoted due to her ERISA related inquiries. Therefore, the Court must dismiss Plaintiff's claim under § 1140 that Defendants terminated her employment at UHVD in an attempt to deny her rights and benefits under ERISA.

**(e) State claims**

Plaintiff also alleges, in her first three causes of action, claims that would be decided under New York Labor Law and principles of contract law. Generally, she alleges that Defendants have refused to pay her for wages she earned, deferred compensation, for accrued vacation leave, and unpaid commissions for 2001 that she contends were part of her employment agreement. Complaint (Dkt. No. 1) at ¶¶ 20–30. Plaintiff focuses primarily on the yearly commission which she contends was calculated by a formula, measured by UHVD's profits, a term of the employment agreement, and not subject to the discre-

tion of the Defendants. Complaint (Dkt. No. 1) at ¶¶ 13, 15.

In moving to dismiss these claims, Defendants contend that (1) there are no "commissions" due to her because bonuses that had been given out in the past were always within the discretion of Gregory and there is no contractual right to the same, Def. Memo. (Dkt. No. 5) at 8–11; (2) Plaintiff is not entitled to vacation pay because she received compensation for the vacation days that she did not use, Def. Memo. (Dkt. No. 5) at 11; and (3) she may not bring claim for wages against Gregory in his personal capacity because he is not an "employer" within the meaning of New York Labor Law, Def. Memo. (Dkt. No. 5) at 11–12.

Plaintiff's Complaint asserts that this Court should assume supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over "the claims under New York Labor Law and for breach of contract [because they] arise from the same set of facts and circumstances as are claimed under [ERISA]." Complaint (Dkt. No. 1) at ¶ 3. However, after consideration of the present motion to dismiss, Plaintiff's only remaining claim is for damages pursuant to § 1132. In deciding that claim, the Court will focus on the actions of Defendants in releasing plan documents. *See McDonnell*, 2002 WL 1968336, *2, 2002 U.S. Dist. LEXIS 15826, *6. Any employment agreement that may have existed between the parties, that would form the basis for Plaintiff's unpaid commissions, wages, and earned vacation benefits, will not be part of this ERISA inquiry. Therefore, the facts between these claims are not related, and the Court will decline to take supplemental jurisdiction over Plaintiff's First, Second and Third Causes of Action.

## III. CONCLUSION

For the reasons set forth in the above discussion, it is hereby

ORDERED, that Defendants' motion to dismiss is **DENIED** with respect to Plaintiff's Sixth Cause of Action seeking damages pursuant to 29 U.S.C. § 1132; and it is further

ORDERED, that Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's remaining ERISA claims set forth in the Complaint as the Fourth, Fifth, and Seventh Causes of Action; and it is further

ORDERED, that because the Court will decline to exercise its supplemental jurisdiction over the state law claims, set forth in the Complaint as the First, Second and Third Causes of Action, they are **DISMISSED**; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.