**In re POLAROID ERISA LITIGATION.**

No. 03 Civ. 8335(WHP).

United States District Court, S.D. New York.

Sept. 29, 2006.

Amy C. Williams–Derry, Derek W. Loeser, Lynn Lincoln Sarko, Tobias Jacob Kammer, Keller Rohrback L.L.P, Seattle, WA, Joseph H. Meltzer, Schiffrin & Barroway, LLP, Radnor, PA, Ron Kilgard, Keller Rohrback P.L.C, Phoenix, AZ, Curtis Victor Trinko, Law Offices of Curtis V. Trinko, LLP, New York, NY, for Plaintiff.

Arlo Devlin–Brown, U.S. Attorney's Office, David P. Donovan, Eric J. Mogilnicki, Matthew Phineas Previn, Melanie Diana Coates, Ryan Michael Pierce, Wilmer Cutler Pickering LLP, Emily Frug Klineman, New York, NY, Bradley J. Miller, Steven Franklin Cherry, Wilmer, Cutler, Pickering, Hale & Dorr L.L.P., McLean, VA, for Defendant.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiffs Robert Correia ("Correia"), Bradford Pires ("Pires") and Otis Powers ("Powers") (collectively, "Plaintiffs") bring this putative class action pursuant to the Employee Retirement and Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.,* alleging various breaches of fiduciary duty concerning the Polaroid Retirement Savings Plan (the "Plan"). On March 31, 2005, this Court issued a Memorandum and Order denying Defendants' motion to dismiss except with respect to Plaintiffs' claim that Defendants breached their fiduciary duties by failing to avoid conflicts of interest (the "March 31

Order").[1] *In re Polaroid ERISA Litigation,* 362 F.Supp.2d 461 (S.D.N.Y.2005). Plaintiffs now move to certify a class pursuant to Fed. R.Civ.P. 23. For the reasons set forth below, Plaintiffs' motion is granted.

## BACKGROUND

### I. *Summary of Plan Terms*

Familiarity with the March 31 Order is assumed. The Plan comprised various components, of which only the 401(k) and Employee Stock Ownership Plan ("ESOP") are relevant for purposes of this motion. (Declaration of Ryan Pierce, dated Oct. 24, 2005 ("Pierce Decl.") Ex. B: Plan.) Participants in the 401(k) portion of the Plan could direct a portion of their compensation into any of 38 investment funds, including the Polaroid Stock Fund, which consisted of Polaroid stock. (Declaration of William Hubert, dated Oct. 19, 2005 ("Hubert Decl.") ¶¶ 2–3, Ex. A: Plan Booklet.) Participants in the 401(k) had no obligation to invest in the Polaroid Stock Fund. (Pierce Decl. Exs. A, B.) The Employee Stock Ownership Plan ("ESOP") portion of the Plan was funded entirely by Polaroid and was to invest "primarily" in Polaroid common stock. (Pierce Decl. Ex. B.) Nonetheless, three categories of ESOP participants could fully diversify and/or liquidate their ESOP accounts: (1) participants who had left the company; (2) participants on disability; and (3) participants over 59.5 years old. (Pierce Decl. Ex. B; Hubert Decl. ¶ 2.)

### II. *The Parties' Relationships*

Plaintiffs are former Polaroid employees and former Plan participants. (Declaration of Amy Williams–Derry, dated Nov. 28, 2005 ("Derry Decl.") Exs. 9–11: Transcripts of Depositions of Correia, Pires and Powers.)

Plaintiff Correia, along with thousands of other employees, left Polaroid in the period between 1999 and 2001. (Declaration of Harvey Greenberg, dated Oct. 18, 2005 ("Greenberg Decl.") ¶¶ 2–3.) Many of the departing employees were provided with severance packages, and a majority signed release forms which purported to release all claims against Polaroid except for claims "for vested accrued benefits" under the Plan. (Pierce Decl. Ex. U: Correia Termination Letter; Greenberg Decl. ¶¶ 4–7, Ex A: Termination Letter, Release and Acknowledgement.) Correia was among those who executed a release, which provided, in relevant part:

> "[Y]ou agree to release all claims you may have against [Polaroid], [the Plan] ... and their directors, trustees, officers, shareholders, employees, agents, administrators, successors and assigns, including, but not limited to, any claims arising out of or in connection with your employment by [Polaroid] or the termination of your employment.... This release will not preclude claims ... for vested accrued benefits under the ... [Plan] or benefits of this Program as determined by the plan administrators of such Plan[ ]."

(Pierce Decl. Ex. U.)

### III. *The Deterioration of Polaroid's Stock Price*

At the beginning of the Class Period, Polaroid stock traded at $25.88 per share.[2] (Amended Consolidated Complaint, dated Sept. 15, 2004 ("Compl." or "Complaint") ¶ 120.) However, throughout the Class Period, Polaroid's financial position deteriorated and its stock price declined. By November 2001, Polaroid stock traded at $0.24 per share. (Compl.¶ 206.) In December 2001, State Street divested the ESOP of Polaroid stock for an average price per share of

---

**1.** The Defendants are former Polaroid Plan fiduciaries Andra Bolotin, Judith G. Boynton, Benjamin C. Byrd III, Janet B. Cramer, Gary DiCamillo ("DiCamillo"), Deirdre J. Evens, William L. Flaherty, Neal D. Goldman, Harvey Greenberg, Donald M. Halsted III, William Hubert, John Jenkins, Warren Kantrowitz, Carl L. Lueders, Jeffrey S. Miller, Ralph Norwood, Philip Ruddick, and Patricia R. Weller (all of these individuals collectively the "Individual Defendants") and Plan trustee State Street Bank and Trust Compa-

ny ("State Street"). On July 11, 2006 Plaintiffs filed a *Motion for Preliminary Approval of a partial settlement* reached with the Individual Defendants. That motion is currently before this Court *sub judice,* and does not affect the decision of Plaintiffs' previously filed motion for class certification.

**2.** The "Class Period" is the period between October 1, 1999 and January 15, 2003. (Compl.¶ 84.)

$.0946. (Compl.¶ 206.) The Polaroid Stock Fund was liquidated in December 2002 for an average price per share of approximately $.01. (Compl.¶ 206.) The scale of these losses was massive—at the end of 1999, the Plan held over seven million shares of Polaroid common stock, valued at $138,346,897. By the end of 2000, the number of Polaroid shares held by the Plan had increased slightly, but the total value of those shares had plummeted to $45,745,761. (Compl.¶ 82.)

On August 15, 2002, Polaroid's Board of Directors passed a resolution to terminate the Plan and all Plan assets were distributed. (Declaration of Kevin R. Pond, dated Oct. 19, 2005 ("Pond Decl.") ¶ 4; Ex. C: Minutes of Aug. 15, 2002 Board Meeting.) The parties dispute whether the Plan has since been terminated. (Declaration of Derek W. Loeser, dated Nov. 7, 2005, Ex. 3: Letter from Internal Revenue Service, dated Oct. 9, 2003.)

## DISCUSSION

Plaintiffs' basic allegation is that Defendants breached their fiduciary duties by maintaining the Plan's investments in Polaroid common stock despite (1) their knowledge of certain accounting irregularities; and (2) the precipitous decline in price that the stock had taken. Plaintiffs also claim that DiCamillo failed to monitor other Plan fiduciaries, that Defendants made misleading statements to Plan participants and failed to keep them adequately informed, and that all Defendants are liable for the actions of their co-fiduciaries. Plaintiffs move to certify the following class:

> All persons who were participants in or beneficiaries of the Plan at any time between October 1, 1999 and January 15, 2003 (the "Class Period") and whose accounts included investments in Polaroid Stock.

Defendants argue that Plaintiffs lack standing to sue under ERISA and, in any event, cannot satisfy the requirements of Fed. R.Civ.P. 23. This Court considers each of these issues in turn.

## I. Statutory Standing Under ERISA

■ ERISA actions seeking damages for breach of fiduciary duty can be brought only by certain parties under specified conditions. 29 U.S.C. § 1132(a) (titled "Persons empowered to bring a civil action") provides, in relevant part: "A civil action [for breach of fiduciary duty] may be brought . . . (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under Section 1109 of this title." 29 U.S.C. § 1109 provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed . . . by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . .

In *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court stated that claims brought under §§ 1132(a)(2) and 1109 may not be made for individual relief, but instead are "brought in a representative capacity on behalf of the plan." *Russell*, 473 U.S. at 142 n. 9, 105 S.Ct. 3085; *see also Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (concluding that *Russell* bars claims under § 1 132(a)(2) where plaintiffs seek damages on their own behalf and not on behalf of the plan). Thus, to determine whether Plaintiffs have statutory standing under § 1132(a)(2), this Court must determine: first, whether Plaintiffs are "participant[s][or] beneficiar[ies]" of the Plan for purposes of § 1132(a)(2); and second, whether Plaintiffs are truly suing "in a representative capacity on behalf of the plan." *Russell*, 473 U.S. at 142 n. 9, 105 S.Ct. 3085.

### A. Plaintiffs' Status as Plan Participants

29 U.S.C. § 1002(7) defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan. . . ." In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court expanded on the statutory definition: "[T]he term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment ... or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."

Plaintiffs admit that they have no reasonable expectation of returning to Polaroid as employees. Thus, Defendants argue that former Plan participants whose accounts have been liquidated by definition cannot have "a colorable claim to vested benefits" and thus may not bring suit under § 1132(a)(2). *Firestone,* 489 U.S. at 117, 109 S.Ct. 948.

The Second Circuit has declined to apply the *Firestone* standard rigidly in the context of defining a "participant." *See Mullins v. Pfizer, Inc.,* 23 F.3d 663 (2d Cir.1994). While acknowledging a circuit split on the issue of whether former employees qualify as "participants," *Mullins* suggested that "the basic standing issue is whether the plaintiff is *'within the zone of interests ERISA was intended to protect.'"* *Mullins,* 23 F.3d at 668 (emphasis in original) (quoting *Vartanian v. Monsanto Co.,* 14 F.3d 697, 701 (1st Cir.1994)). Applying the "zone of interests" standard, the Court of Appeals concluded that a former employee had standing as a plan participant because he alleged that "but for the fact that [the defendant] misled him, he would have been a participant." *Mullins,* 23 F.3d at 667 (internal quotation marks omitted). The court reasoned that it would reap an "anomalous effect" to "allow[ ] a fiduciary through its own malfeasance to defeat the employee's standing." *Mullins,* 23 F.3d at 668 (internal quotation omitted); *see also Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.1992) (allowing former employee to maintain a claim where he alleged that but for defendant's misconduct, he would still be an employee); *but see Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536–37 (10th Cir.1993) (rejecting "but for" standard as inconsistent with *Firestone);* *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir.1986) (same).

The issue in *Mullins* was whether a defendant could take advantage of its own wrong to avoid suit under ERISA where it had fraudulently induced a plaintiff to liquidate his plan account in order to deprive him of benefits to which he would otherwise have been entitled. However, where the alleged misconduct is less directly linked to plaintiff's decision to terminate his involvement with the plan, the weight of authority in this circuit still allows former employee claims to proceed. *See Gray v. Briggs,* No. 97 Civ. 6252(DLC), 1998 WL 386177, at *4–6 (S.D.N.Y. July 7, 1998) (concluding in the context of a claim under § 1132(a)(1) that a former employee who alleged that distributions received under a defined contribution plan were reduced because of defendants' breach of fiduciary duty was a "participant" for purposes of ERISA, and noting approvingly the breadth of the Second Circuit's holding in *Mullins); Richards v. FleetBoston Fin. Corp.,* 235 F.R.D. 165 (D.Conn.2006) (finding that former employees who had liquidated their plan accounts but who sought benefits to which they would have been entitled prior to retirement were "participants"); *O'Connell v. Kenney,* No. 03 Civ. 0845(DJS), 2003 WL 22991732, at *3–4 (D.Conn. Dec.15, 2003) (holding that the beneficiary of a former account-holder had standing where the account-holder had received a lump sum payment but alleged that the amount of the payment had been miscalculated); *cf. Dickerson v. Feldman,* 426 F.Supp.2d 130, 135 (S.D.N.Y.2006) (dismissing putative class action brought under § 1132(a)(2) by a lone former employee who accepted a final distribution of a plan account prior to filing suit and who alleged misconduct that was already publicly disclosed at the time of the account's liquidation).

Moreover, although the Second Circuit recently declined to address the issue of whether former employees have standing to sue under § 1132(a)(2), *see Coan v. Kaufman,* 457 F.3d 250, 255 (2d Cir.2006), in doing so it noted in dicta that a former employee's claim that a lump sum distribution of a defined contribution account balance would have been greater absent the defendants' breach of fiduciary duty is "[a]rguably ... [a claim]

for benefits—which, if colorable, means that she may become eligible for benefits and thus qualif[y] as a participant under ERISA." *Coan,* 457 F.3d at 255–256 (internal citations and quotation marks omitted); *see also Gray,* 1998 WL 386177, at *4–6.

■ In this action, Plaintiffs do not allege that they would still be Plan participants but for defendants' misconduct. However, they do allege that the distributions they received under a defined contribution plan were reduced because of defendants' breaches of fiduciary duty and that the defendants engaged in numerous misrepresentations and non-disclosures prior to the liquidation of their accounts. *See, e.g.,* Complaint ¶¶ 4–6, 82–83, 121–126, 143–157, 163–180, 192–208. Plaintiffs are also within the zone of interests ERISA was intended to protect. *See Gray,* 1998 WL 386177, at *4–6 (applying zone of interests test to encompass a former employee); *Burke v. Gregory,* 356 F.Supp.2d 179 (N.D.N.Y.2005) (same). Accordingly, this Court finds that Plaintiffs have standing to sue as Plan "participants" under § 1132(a)(2) despite their status as former employees.

### B. *Bringing Suit in a "Representative Capacity"*

Defendants argue that Plaintiffs fail to bring their claims "in a representative capacity on behalf of the plan" because (1) the Plan no longer exists, and thus cannot realize any benefits from the suit; and (2) the putative class consists only of those Plan participants whose accounts were invested in Polaroid stock. Moreover, Defendants argue that even if Plaintiffs' claims are brought on behalf of the Plan, the Complaint does not satisfy the pleading requirements of Fed. R.Civ.P. 23.1 and accordingly must be dismissed. These arguments are without merit.

#### 1. *Existence of the Plan*

■ *Russell* requires suits under § 1132(a)(2) to be brought "in a representative capacity on behalf of the plan." 473 U.S. at 142 n. 9, 105 S.Ct. 3085. There is a factual dispute regarding the date on which the Plan was finally dissolved, and in particular whether that occurred before or after the filing of this action. (*See* Letter from Steven

F. Cherry, dated Nov. 18, 2005; Letter from Lynn L. Sarko, dated Nov. 28, 2005.) In any event, as noted, the Second Circuit has stated that it would be "anomalous" to "allow[ ] a fiduciary through its own malfeasance to defeat the employee's standing." *Mullins,* 23 F.3d at 668. And indeed, other courts that have considered this issue since the Supreme Court's decision in *Russell* have determined that the dissolution of a plan should not bar subsequent suits by participants. *See, e.g., Kling v. Fid. Mgmt. Trust Co.,* 270 F.Supp.2d 121, 127 (D.Mass.2003) ("The fact that the Plan itself no longer exists does not bar recovery."); *Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund,* 933 F.Supp. 1124, 1136 (D.Mass.1996) (same); *Gruber v. Hubbard,* 675 F.Supp. 281, 284 (W.D.Pa.1987) ("To deny plaintiffs relief [on the basis of an argument that the plan no longer existed] would reward defendants for the thoroughness of their alleged mismanagement ... In the absence of a functioning plan, it is the class of beneficiaries and their rights under this plan which represent the interests of the plan for the purposes of [§ 1109]."). In light of these authorities, this Court finds as a matter of law that the dissolution of the Plan—whether it occurred before or after the filing of this action— cannot insulate Defendants from potential liability for past breaches of their fiduciary duties.

#### 2. *Limitation of the Class to Polaroid Stockholders*

■ Defendants also contend that Plaintiffs are not suing on behalf of the Plan "as a whole" and that their claims are accordingly barred by *Russell.* In particular, Defendants argue that because Plaintiffs sue only on behalf of those Plan participants whose accounts were invested in Polaroid stock, any benefits would not accrue to the Plan as a whole, but rather to those individuals who owned Polaroid stock during the Class Period.

Although the Second Circuit has not yet spoken to this issue, Defendants' argument runs against the prevailing grain of authority. *See, e.g., In re Schering–Plough Corp. ERISA Litig.,* 420 F.3d 231, 234–35 (3d Cir.

2005) (holding that where plaintiffs alleged that "the Plan suffered significant losses" and requested that fiduciaries "make good to the Plan the losses to the Plan," they need not "seek[ ] to recover for all plan participants allegedly injured by the fiduciary breach"); *Kuper v. Iovenko,* 66 F.3d 1447, 1453 (6th Cir.1995) (holding that a subclass of plan participants could sue where the remedy sought by plaintiffs "would benefit the plan as a whole and ... cure any harm that the plan suffered"); *Milofsky v. Am. Airlines, Inc.,* 442 F.3d 311, 313 (5th Cir.2006) (per curiam) (declining to dismiss claims by a subset of plan participants who sought to recover losses to a plan); *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 458 F.3d 359, 363 (4th Cir.2006) ("[L]iability under [§ 1132(a)(2) ] is not limited to losses that accrue to *all* plan participants—it is, however, limited to plan losses" (emphasis in original).).

In permitting Plaintiffs to proceed, this Court is mindful that the Second Circuit has declined to allow lone plaintiffs or small groups of individuals to sue under § 1132(a)(2). *See, e.g., Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 149 (2d Cir.1999) (holding that an individual plaintiff could not proceed under § 1132(a)(2) because it affords no remedies to individual beneficiaries); *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir. 1993) (noting that "*Russell* ... bars [individual] plaintiffs from suing under [§ 1132(a)(2) ] because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."). However, because Plaintiffs assert claims on behalf of a broad class of participants in the Plan, seek damages for injuries suffered by the Plan, and rely on significant weight of authority from outside this Circuit, the Court believes that this case presents distinguishable circumstances.

Defendants' reliance on *Fisher v. J.P. Morgan Chase & Co.,* 230 F.R.D. 370 (S.D.N.Y.2005) is misplaced. *Fisher* involved a putative class action in which the court determined that the named plaintiffs lacked standing under § 1132(a)(2) to sue for violations of § 1109 because they asserted claims only on behalf of participants who held shares of the employer's stock and not on behalf of the plan as a whole. However,

*Fisher* was based largely on *Strom,* Lee and other cases that barred claims by individuals or small groups of plan participants. *Fisher* also relied heavily on *Milofsky v. Am. Airlines, Inc.,* 404 F.3d 338 (5th Cir.2005) and *In re Schering–Plough Corp. Erisa Litig.,* 387 F.Supp.2d 392 (D.N.J.2004)—both of which were subsequently overturned (*Schering–Plough* reversed on appeal and *Milofsky* vacated in a per curiam opinion after a rehearing *en banc* ). *See Schering–Plough,* 420 F.3d 231; *Milofsky,* 442 F.3d 311. Therefore, this Court declines to follow *Fisher.*

3. *Rule 23.1*

■ The Second Circuit has recently held that the heightened pleading requirements of Rule 23.1 do not apply to plaintiffs in ERISA claims brought under § 1132(a)(2). *Coan,* 457 F.3d at 257–58 (finding that Rule 23.1 "[b]y its terms ... does not apply to [§ 1132(a)(2) ] suits"). Accordingly, Plaintiffs were under no obligation to comply with Rule 23.1 in this action.

II. *Class Certification Standard*

Fed.R.Civ.P. 23 governs class actions. *Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 18 (2d Cir.2003); *accord Benner v. Becton Dickinson & Co.,* 214 F.R.D. 157, 162 (S.D.N.Y.2003). The Supreme Court has instructed that district courts are to conduct a "rigorous analysis" to ascertain whether the requirements of Rule 23 have been satisfied. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *accord Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999). Although Rule 23 must be liberally construed, *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997), the party seeking to certify a class bears the burden of establishing the prerequisites of Rule 23. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Caridad,* 191 F.3d at 291.

■ Rule 23 imposes two prerequisites for a class action. First, the party seeking certification must demonstrate that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2)

there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir.2001); *Caridad*, 191 F.3d at 291; *Benner*, 214 F.R.D. at 162. Second, the party seeking certification must show that the proposed class ·action falls within one of the types maintainable under Rule 23(b) because: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. Fed.R.Civ.P. 23(b); *Visa*, 280 F.3d at 133; *Caridad*, 191 F.3d at 292; *Benner*, 214 F.R.D. at 163.

■ In considering a motion for class certification, courts must accept the allegations in the complaint as true. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978) ("[I]t is proper to accept the complaint allegations as true in a class certification motion."); *accord Benner*, 214 F.R.D. at 163. A court may not examine the merits of the case in a motion for class certification. *Visa*, 280 F.3d at 133 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)); *Caridad*, 191 F.3d at 291; *Bakalar v. Vavra*, 237 F.R.D. 59, 63 (S.D.N.Y.2006). However, a court may consider material outside the pleadings in determining whether class certification is appropriate. *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 121–22 (E.D.N.Y.2003); *Kaczmarek v. Int'l Bus. Machines Corp.*, 186 F.R.D. 307, 311 (S.D.N.Y.1999) (citing *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982)). Notwithstanding a court's ability to look beyond the pleadings, its resolution of a class certification motion may not become "a preliminary inquiry into the merits of the case." *Eisen*, 417 U.S. at 177, 94 S.Ct. 2140. "In determining the propriety of

a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178, 94 S.Ct. 2140 (internal quotation omitted).

### A. Rule 23(a) Requirements

#### 1. Numerosity

■ Defendants do not contest that the putative class is numerous. When a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). The proposed class in this action numbers approximately 8,000—a number sufficiently high to render joinder of all parties impracticable. (Declaration of Lynn L. Sarko, dated Sept. 22, 2005 ("Sarko Decl.") ¶¶ 10–11; Exs. 3 & 4: Form 5500 Annual Return/Report of Employee Benefit Plan for 1999 and 2000.) Thus, the putative class is sufficiently numerous to satisfy the requirements of Rule 23(a). *See Koch v. Dwyer*, No. 98 Civ. 5519(RPP), 2001 WL 289972, at *3 (S.D.N.Y. Mar.23, 2001) (finding putative class of 3,400 members sufficiently numerous in the ERISA context).

#### 2. Commonality

■ "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y.2002). Defendants do not contest that the proposed class action raises "questions of law [and] fact common to the class" as required by Rule 23(a). These issues include whether the Defendants acted as fiduciaries for purposes of § 1109, what communications they made to members of the class, the truth of those communications, the state of Defendants' knowledge regarding Polaroid stock, and the actions (if any) Defendants took to protect the Plan. Accordingly, there are sufficient issues of law and fact common to the class to justify certification pursuant to Rule 23(a). *See Marisol A.*, 126 F.3d at 376; *In re Global Crossing Sec. and Erisa Litig.*, 225 F.R.D. 436, 452

(S.D.N.Y.2004) (finding allegations that ERISA defendants breached their fiduciary duties in connection with the administration of an employee benefits plan sufficient to establish common questions of law and fact).

### 3. *Typicality*

 Typicality exists where the "claims of [the] representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *In re Oxford Health Plans,* 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992)). When "the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993); *Global Crossing,* 225 F.R.D. at 452. However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) (internal citation omitted)).

Plaintiffs argue that their claims are typical of the class because they stem from Defendants' alleged breaches of duty as Plan fiduciaries, because all members of the proposed class can assert the same legal arguments to establish Defendants' liability, and because suits under § 1132(a) are brought for plan-wide relief as opposed to individual

relief. *See, e.g.,* 29 U.S.C. §§ 1109, 1132(a) (liability for breach of fiduciary duty is "to the plan"); *LaRue,* 458 F.3d at 363 ("[L]iability under [§ 1132(a)(2) ] is ... limited to plan losses."). Defendants counter that the requirements for typicality are not met because a portion of the class signed releases that bar Plaintiffs' claims and because Plaintiffs had the ability to make individualized investment decisions with respect to their accounts.

#### a. *Effect of Releases*

Although the Second Circuit has never addressed the issue, numerous courts have held that under ERISA, individuals do not have the authority to release a defined contribution 15 plan's right to recover for breaches of fiduciary duty. *See, e.g., Bowles v. Reade,* 198 F.3d 752, 759–61 (9th Cir.1999) (finding that a plaintiff could not release claims brought on behalf of a plan without the consent of the plan); *Nelson v. IPALCO Enters.,* No. IP02–477 (CHK), 2003 WL 23101792, at *6 (S.D.Ind. Sept.30, 2003) (finding typicality in the context of an ERISA class action brought on behalf of a plan despite the fact that certain plaintiffs had signed releases); *In re Williams Cos. ERISA Litig.,* 231 F.R.D. 416 (N.D.Okla. 2005) (finding as a matter of law that individuals could not release claims brought on behalf of a plan); *In re Qwest Sav. & Inv. Plan ERISA Litig.,* No. 02–RB–464 (CBS), 2004 U.S. Dist. LEXIS 24647, at *14 (D.Colo. Sept. 27, 2004) (same).[3]

 As discussed above, Plaintiffs assert claims on behalf of the Plan. Moreover, the releases at issue in this action appear to contain substantially similar language, and Defendants do not point to any reason why their validity is unlikely to be subject to treatment on a class-wide basis.[4] Accordingly, while this Court is mindful that a motion

---

**3.** Defendants rely on *Spann v. AOL Time Warner,* 219 F.R.D. 307, 319 (S.D.N.Y.2003) and *Walker v. Asea Brown Boveri, Inc.,* 214 F.R.D. 58 (D.Conn.2003). However, those cases are inapposite as they did not involve claims brought on behalf of a plan.

**4.** Defendants point to the Second Circuit's fact specific, totality of the circumstances test for the enforceability of releases executed in the ERISA

context to support their argument that the releases undermine typicality. *See Laniok v. Advisory Comm.,* 935 F.2d 1360, 1368 (2d Cir.1991). This is a *non sequitor.* To undermine typicality, any waiver would have to encompass claims brought *on behalf of the Plan* and, as noted, individual class members did not have the legal right to execute such releases.

for class certification is not the time to address the merits of the case, *Caridad*, 191 F.3d at 291, Defendants may not invoke the releases executed by certain class members to defeat typicality. *See Nelson*, 2003 WL 23101792, at *6 (noting that "[t]ypicality ... should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members" (internal quotation omitted)).

b. *Individualized Investment Decisions*

Defendants argue that Plaintiffs' claims are not typical because 401(k) participants in the Plan, and certain categories of participants in the ESOP, were responsible for their own account management decisions. Defendants claim that these facts implicate 29 U.S.C. § 1104(c), which relieves fiduciaries of liability when the investment losses resulted from acts or omissions of plan participants. In addition, Defendants argue that a class cannot be certified with respect to Plaintiffs' claims for misrepresentation or failure to disclose because ERISA does not recognize a "fraud on the market" theory. These arguments are unpersuasive.

■ First, whether the degree of individual control present in the Polaroid Plan is sufficient to implicate § 1104(c) is determined by the administration and structure of the Plan as a whole, and is thus a question common to the class. *See In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 578 (S.D.Tex.2003). Second, § 1104(c) does not apply to the central claims against Defendants—namely, that they invested ESOP contributions in Polaroid stock and continued to offer Polaroid stock as an investment option for the 401(k) Plan after it was prudent to do so. *See In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 576–79 (S.D.Tex. 2003) (finding that even when § 1004(c) applies, fiduciaries are liable for losses that are not attributable to the acts or omissions of plan participants). Third, if Plaintiffs' claims of misrepresentation and nondisclosure are substantiated, § 1104(c) will not apply at all. *See In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 (3d Cir.1996) (noting that for

§ 1004(c) to apply, fiduciaries must provide plan participants with "complete and accurate information" concerning investment alternatives in order to facilitate individualized control). Thus, accepting all allegations in the Complaint as true as this Court is required to do on a motion for class certification, *Shelter*, 574 F.2d at 661 n. 15, § 1104(c) does not provide a basis to defeat typicality. *See Rankin v. Rots*, 220 F.R.D. 511, 519 (E.D.Mich.2004) (finding that a plaintiff seeking to avoid class certification by invoking individualized defenses "ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs" (internal quotation omitted)); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 465 (E.D.Pa. 2000) ("The focus of [the typicality] inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty.").

■ Defendants' argument that Plaintiffs' claims for misrepresentation and nondisclosure inherently require an individualized analysis is also insufficient to defeat typicality. The Complaint contains allegations of plan-wide misrepresentations and nondisclosures which, by definition, were not individualized. *See, e.g.*, Complaint ¶¶ 249, 252. The class seeks recovery for the Plan as a whole on the basis of these plan-wide misrepresentations and non-disclosures. Plaintiffs' claims are accordingly typical of those of the class as a whole. *See Rankin*, 220 F.R.D. at 522–23 (finding typicality where, "[a]lthough there may be factual differences as to whether, in the case of voluntary employee contributions, a class member relied on any alleged misrepresentations, the ... misrepresentations are alleged to have been made to the entire class of participants"); *IPALCO*, 2003 WL 23101792, at *5 (rejecting argument similar to the one advanced by Defendants here where "relevant representations were distributed or made available on a class-wide basis"); *Ikon*, 191 F.R.D. at 464; *In re Qwest Sav. & Inv. Plan ERISA Litig.*, No. 02–RB–464 (CBS), 2004

U.S. Dist. LEXIS 24693, at *14–16 (D.Colo. Sept. 27, 2004).

For these reasons, the Court finds that Plaintiffs satisfy the typicality requirement of Rule 23(a).

### 4. Adequacy

 Under Rule 23, adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another. *Drexel*, 960 F.2d at 291. Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members. *Drexel*, 960 F.2d at 291.

 Defendants do not contest the adequacy of Plaintiffs' counsel, but assert that the representative Plaintiffs would not "adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In particular, Defendants complain that Powers made offensive statements about minorities, women, and Jews in an internet chat room (and thus cannot adequately represent members of those groups) and that he destroyed documents several days before his deposition. Defendants also argue that none of the Plaintiffs invested in Polaroid stock through their 401(k) accounts, and that accordingly they lack a personal interest in vigorously litigating those claims on behalf of the class. Finally, Defendants argue that Correia and Pires have been little more than spectators in this action, because they have been uninvolved in discovery and lack all but a rudimentary understanding of the nature of this action.

While Powers' bigoted remarks are repugnant to this Court, there is no evidence that he has ever discriminated against minorities, women or Jews in the course of his employment or business affairs, and his interests are aligned with the other members of the class in seeking to maximize recovery on behalf of the Plan. *Drexel*, 960 F.2d at 291. Similarly, as discussed above, the central claims in this action do not hinge on whether

a particular individual chose to invest in a 401(k) plan—rather, they focus on the nature of Defendants' conduct. *See Rankin*, 220 F.R.D. at 518 ("The fact that [plaintiff] did not voluntarily invest in … stock is a minor distinction in relation to the overarching question of whether defendants violated their fiduciary duties under ERISA."). Further, the relative lack of involvement of Correia and Pires does not rise to the high degree of neglect that would be required to render them inadequate class representatives. *See Koch*, 2001 WL 289972, at *4 ("[T]he Supreme Court has expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance") (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372–74, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).).

The only issue of genuine importance to adequacy focuses on Powers' destruction of documents relevant to this action, which could give rise to unique defenses. *See Baffa*, 222 F.3d at 61 (noting that a witness who acts in a manner that may give rise to unique defenses may not adequately represent a class). However, based on a review of Powers' deposition transcript, it appears that the need for document retention during litigation has been clarified for him and that he understands his need to comply. (Pierce Decl. Ex. T.) Thus, this Court finds that Plaintiffs satisfy the adequacy requirement of Rule 23(a).

### B. Rule 23(b) Requirements

 Fed.R.Civ.P. 23(b) provides, in relevant part:

> An action may be maintained as a class action if … (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent .or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

As noted, this is an action for breach of fiduciary duty brought under § 1132(a)(2) on

behalf of the Plan. Because the allegations in the Complaint implicate misconduct in the management of the Plan as a whole, disparate lawsuits by individual participants would raise the specter of "varying adjudications." Similarly, allowing multiple actions, each of which would seek the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create "incompatible standards of conduct" for the Defendants. These are precisely the problems Rule 23(b)(1) was intended to avoid. Indeed, "ERISA litigation of this nature presents a paradigmatic example of a [Rule 23](b)(1) class." *Kolar v. Rite Aid Corp.*, No. Civ.A. 01–1229, 2003 WL 1257272, at *3 (E.D.Pa. Mar.11, 2003). Accordingly, this Court finds that certification of the class under Rule 23(b)(1) is appropriate. *See Global Crossing*, 225 F.R.D. at 453 (certifying class under Rule 23(b)(1) in § 1132(a)(2) action similar to this one); *Rankin*, 220 F.R.D. at 521–23 (same); *Ikon*, 191 F.R.D. at 466 (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is granted. The Court appoints Correia, Pires and Powers as class representatives. Schiffrin & Barroway, LLP and Keller Rohrback L.L.P. are appointed class counsel. Curtis V. Trinko is appointed liason counsel.

SO ORDERED: